AMERICAN EQUITABLE ASSURANCE COMPANY OF NEW YORK; GREAT AMERICAN INSURANCE COMPANY; HARTFORD FIRE INSURANCE COMPANY; THE CONTINENTAL INSURANCE COMPANY; AND VIRGINIA FIRE AND MARINE INSURANCE COMPANY v. CHARLES F. GOLD, COMMISSIONER OF INSURANCE; HENRY L. BRIDGES, I MILLER WARREN, CHARLES F. GOLD, BERRY C. GIBSON AND CURTIS H. FLANAGAN, CONSTITUTING THE BOARD OF TRUSTEES OF THE NORTH CAROLINA FIREMEN'S PENSION FUND; THE NORTH CAROLINA FIREMEN'S ASSOCIATION; C. R. PURYEAR AND RAY E. SCOTT.

HARDWARE MUTUAL INSURANCE COMPANY OF THE CAROLINAS, INC., v. CHARLES F. GOLD, COMMISSIONER OF INSURANCE; HENRY L. BRIDGES, I. MILLER WARREN, CHARLES F. GOLD, BERRY C. GIBSON AND CURTIS H. FLANAGAN, CONSTITUTING THE BOARD OF TRUSTEES OF THE NORTH CAROLINA FIREMEN'S PENSION FUND; THE NORTH CAROLINA FIREMEN'S ASSOCIATION; C. R. PURYEAR AND RAY E. SCOTT.

(Filed 28 January, 1959.)

**1. Constitutional Law § 10—**

The presumption is in favor of the constitutionality of an act of the General Assembly, and a statute will not be declared invalid unless its unconstitutionality be determined beyond reasonable doubt.

**2. Taxation § 1—**

The constitutional requirement of uniformity in taxation applies not only to taxes on property but also to taxes on trades, professions, franchises and incomes. N. C. Constitution, Art. V, sec. 3.

**3. Insurance § 3—**

An insurance premium is a consideration paid, whether in money or otherwise, for a contract of insurance.

**4. Insurance § 1:     Firemen's Pension Fund Act—**

The tax imposed by Chapter 1420, Session Laws of 1957, (G.S. 118-20) is not a tax imposed on insurance companies as a condition to writing insurance and is not a part of the premium but is an addition to the

premium and a tax to be paid by the purchasers of insurance and collected by insurers for the Firemen's Pension Fund.

**5. Constitutional Law § 20:    Taxation § 1:    Firemen's Pension Fund Act—**

The provisions of sec. 1½, Chapter 1420, Session Laws of 1957, (G.S. 118-37) exempting those who purchase policies from insurance companies which are members of the Farmers Mutual Fire Insurance Association from the tax imposed by the statute on those who purchase insurance from other companies, results in unconstitutional discrimination in the imposition of the tax, it being established by a finding of fact that the exempted companies sell insurance of the kind taxed by the statute.

WINBORNE, C. J., took no part in the consideration or decision of this case.

APPEAL by plaintiffs from *Clark, J.,* Second August 1958 Civil Term, of WAKE.

Plaintiffs in these cases seek a determination under the Declaratory Judgment Act of the constitutionality of c. 1420, S. L. 1957, creating a firemen's pension fund. The causes were here previously on appeal from a judgment sustaining a demurrer to the complaint. That judgment was reversed. A summary was then made of the allegations forming the basis of the asserted unconstitutionality of the statute. Reference is made thereto, *Assurance Co. v. Gold, Comr. of Insurance,* 248 N.C. 288, 103 S.E. 2d 344.

At the same term an action seeking to present the identical questions now raised was dismissed for want of a genuine controversy. *Bizzell v. Insurance Co.,* 248 N.C. 294, 103 S.E. 2d 248.

Defendants, when the cause reached the Superior Court after the prior appeal, filed answers. The causes were consolidated and one judgment was rendered, based on the pleadings, stipulation of the parties, and findings made by the court. The court concluded that none of the alleged grounds of invalidity were well founded and adjudged the statute valid and constitutional. Plaintiffs excepted to the several conclusions of law and judgment and appealed.

*Allen & Hipp and Joyner & Howison for plaintiff appellants.*
*Ehringhaus & Ellis, Attorney General Seawell, and Staff Attorney Pullen for defendant appellees.*

RODMAN, J.    Plaintiffs assert the statute in question violates both the State and Federal Constitutions in that it levies a tax not uniform in its application and denies to them the equal protection and due process of law.

When called upon to pass on the constitutionality of a statute, it

is assumed that the Legislature has not trespassed on forbidden territory delineated by the people by constitutional restrictions. Every presumption favors the validity of a statute. It will not be declared invalid unless its unconstitutionality be determined beyond reasonable doubt. These principles have been enunciated in a multitude of cases. Recent statements to that effect are made in *Greensboro v. Wall*, 247 N.C. 516, 101 S.E. 2d 413; *Roller v. Allen*, 245 N.C. 516, 96 S.E. 2d 851; *Wilson v. High Point*, 238 N.C. 14, 76 S.E. 2d 546; *Board of Managers v. Wilmington*, 237 N.C. 179, 74 S.E. 2d 749; *Nash v. Tarboro*, 227 N.C. 283, 42 S.E. 2d 209; *Nesbitt v. Gill*, 227 N.C. 174, 41 S.E. 2d 646; *Tobacco Co. v. Maxwell*, 214 N.C. 367, 199 S.E. 405. In reaching our decision in the present case we are mindful of the principle declared in those cases.

While several reasons are assigned to support the assertion of invalidity, we find it necessary to pass on only one, i.e.: Does sec. 1½ of the Act, reading "Provided, nothing in this Act shall be construed to include Farmers Mutual Fire Insurance Associations," destroy the uniformity of the tax levied by the Act and deprive plaintiffs of the equal protection and due process of law?

"Taxes on property shall be uniform as to each class of property taxed. Taxes shall be levied only for public purposes, and every act levying a tax shall state the object to which it is to be applied. The General Assembly may also tax trades, professions, franchises and incomes . . ." N. C. Constitution, Art. V., sec. 3.

Literally, the language used restricts uniformity to taxes on property, but an unbroken line of decisions has construed the rule of uniformity required by the Constitution to apply equally to the taxes authorized by the last quoted sentence. *Kenny Co. v. Brevard*, 217 N.C. 269, 7 S.E. 2d 542; *Leonard v. Maxwell*, 216 N.C. 89, 3 S.E. 2d 316; *Hilton v. Harris*, 207 N.C. 465, 177 S.E. 411; *Roach v. Durham*, 204 N.C. 587, 169 S.E. 149; *Clark v. Maxwell*, 197 N.C. 604, 150 S.E. 190, aff. 282 U.S. 811; *Tea Company v. Doughton*, 196 N.C. 145, 144 S.E. 701; *S. v. Williams*, 158 N.C. 610, 73 S.E. 1000; *Worth v. R. R.*, 89 N.C. 301; *Gatlin v. Tarboro*, 78 N.C. 119.

An examination of the statute is necessary to ascertain legislative purpose and the means used to accomplish that purpose. Art. 3 is directed to be included in chapter 118 of the General Statutes. The statute adds secs. 18 to 36 inclusive to that chapter. For convenience we shall hereafter refer to those portions of the statute necessary for determination of this case by the section numbers directed to be used in the General Statutes.

Sec. 18 establishes a State fund to be known as the North Carolina Firemen's Pension Fund "to provide pension allowances and other

benefits for eligible firemen in the State who elect to become members . . ."

This fund is composed of (a) contributions by firemen, G.S. 118-24, and (b) taxes as provided by G.S. 118-20. Sec. 20 reads: "Every fire insurance company, corporation or association as aforesaid shall, within 75 days from December thirty-first of each year, deliver and pay over to the State Insurance Commissioner the sum of one dollar ($1.00) out of and from every one hundred dollars ($100.00), and at that rate, upon the amount of all premiums written on fire and lightning policies covering property in North Carolina located in areas where fire protection is available during the year ending December thirty-first in each year, or such portion of each year as said company, corporation or association shall have done business, provided, that, the premium on fire and lightning policies covering property in North Carolina issued by said Fire Insurance Company, corporation or association shall be increased by the amount of said payment. All money so paid shall be paid over by the Insurance Commissioner to the State Treasurer as custodian of the North Carolina Firemen's Pension Fund."

For the purpose of ascertaining the amount of taxes payable to the Pension Fund, G.S. 118-19 requires every fire insurance company to file with the Insurance Commissioner "a just and true account of all premiums collected and received from all fire insurance business done in North Carolina during the year ending December thirty-first . . ."

Where did the Legislature place the burden of the tax imposed? The answer is to be found in the section which imposes the tax. Sec. 20 does two things: First it prescribes the measuring rod to determine the amount of the tax to be paid. It is clear that amount is one per cent of the premium. The word "premium," when used in connection with insurance, has a well-defined meaning. It is "the consideration paid, whether in money or otherwise, for contract of insurance." Webster's New Int. Dic., 2d ed. "Broadly defined, insurance is a contract by which one party, for a compensation called the premium, assumes particular risks of the other party and promises to pay to him or his nominee a certain or ascertainable sum of money on a specified contingency." *S. ex rel. Duffy v. Western Auto Supply Co.,* 16 N.E. 2d 256, 119 A.L.R. 1236.

Having fixed the yardstick with which to measure the tax, the statute in clear and mandatory language says that the premium "shall be increased by the amount of said payment." Can there be any doubt that the Legislature intended for the insurance company to charge its insured with the premium plus the tax; and this tax, when collected and received (sec. 19), paid to the Insurance Commissioner?

This tax is not paid as part of the premium; it is an addition to the premium. There is nowhere a statement that the amount paid is imposed on the insurance company as a condition to writing insurance. It is manifest that the Legislature placed the tax burden on the purchaser of the described insurance.

The similarity between the tax imposed by the statute under consideration and the use tax, G.S. 105-164.6, and the sales tax, G.S. 105-164.7, which taxes are classified along with automobile license taxes, G.S. 105-147(4), is manifest upon comparison of the several statutes.

The classes bearing the tax burden imposed by G.S. 118-20 and 118-2 are different. The latter statute carries no provision requiring the tax to be passed on. The fact that it may be included in the amount paid by the purchaser as a part of the cost of doing business does not make the insurer the collecting agent, collecting the tax from the insured as the statute under consideration directs.

Section 1½ of the Act, codified as G.S. 118-37, provides: "Provided, nothing in this Act shall be construed to include Farmers Mutual Fire Insurance Associations."

Pertinent to this portion of the statute is the sixth finding of fact made by the court, as follows: "That in North Carolina there is what is known as Farmers' Mutual Insurance Association and said association is not licensed to sell insurance in North Carolina, is not engaged in the business of selling insurance in North Carolina and is simply a trade association of which several independent companies are members; that there are in North Carolina some thirty-six 'Town or County Mutual Insurance Companies' organized under G.S. 58-77 (5) (d), only some of which are members of the aforesaid trade association; that said companies are separately licensed under individual names and are, for insurance selling purposes, independent of said trade association; that said companies have their own individual schedules of rates, not controlled or supervised by the North Carolina Fire Insurance Rating Bureau, and they operate upon an unlimited assessment liability plan. These companies operate in a manner unlike any other fire insurance company authorized by law to do business in North Carolina, but some of these companies do write policies in protected areas in competition with some of plaintiffs."

G.S. 58-77 prescribes the amount of capital and surplus required to organize companies to write insurance. Subsection 1 applies to stock life insurance companies. Subsection 2, to stock accident and health companies, subsection 3, to stock fire and marine companies, subsection 4, to stock casualty, fidelity, and surety companies, subsection 5, to mutual fire and marine companies, subsection 6, to mu-

tual life, accident, and health companies, and subsection 7, to mutual casualty, fidelity, and surety companies. Subsection 5, relating to mutual fire and marine companies,. is divided into four parts fixing the capital required, dependent on the assessability of members in differing situations.

The statutes relating to insurance companies supplemented by the finding make it evident, we think, that the insurance associations referred to in the Act are those companies defined in G.S. 58-77 (5) (d). The finding establishes the fact that these companies sell insurance of the kind taxed by c. 1420, S. L. 1957.

No tax must be paid if insurance is purchased from a company defined in sec. 1½ of the Act, G.S. 118-37. A tax must be paid if a purchase is made from any other insurance company.

The discrimination and lack of uniformity is apparent. A tax for the privilege of selecting between two competing insurance companies is contrary to fundamental justice and in violation of the specific requirement of Art. V, sec. 3 of our Constitution. The judgment is

Reversed.

WINBORNE, C.J., took no part in the consideration or decision of this case.