OPINION OF THE COURT
Ciparick, J.
The case on appeal presents an equal protection challenge to one component of New York’s system of retaliatory taxation *308 against foreign insurance companies. We conclude that the statutory provision at issue, Tax Law § 1505-a (d) (8), insofar as it denies a credit to foreign insurers for the payment of the Metropolitan Commuter Transportation District (MCTD) tax surcharge against retaliatory taxes, is unsupported by a legitimate governmental purpose and results in unconstitutional discrimination.
I.
Under article 33 of the New York Tax Law, all insurance companies conducting business in New York State are potentially subject to four franchise taxes (see, Tax Law §§ 1501 [tax on income or capital], 1505-a [MCTD tax surcharge], 1510 [tax on premiums], 1520 [general tax surcharge]). One of these franchise taxes, the MCTD tax surcharge, is imposed on all insurers, domestic and foreign, carrying on business within the MCTD (see, Tax Law § 1505-a [a]).[1] The purpose of the MCTD tax surcharge is to provide additional funds for the support of mass transportation in the MCTD.
In addition to the four franchise taxes of article 33, foreign insurers doing business in New York are also potentially subject to a "retaliatory” tax, so named because it is designed to retaliate, albeit indirectly, against foreign States with more onerous tax laws than New York (see, Insurance Law § 1112).[2] To determine whether a retaliatory tax is owed by a foreign *309 insurer, two calculations are performed. The first calculation is the total amount of taxes, aside from any potential retaliatory tax, that New York imposes on the foreign insurer for the privilege of conducting an insurance business within its borders. The second calculation is the total amount of taxes that the foreign insurer’s State of domicile would impose on a comparable New York insurer for the privilege of doing business in the foreign State. If the foreign State’s hypothetical tax bill is higher than New York’s actual tax bill, New York adopts the foreign State’s greater tax burden as its own and imposes it on the foreign insurer.
The Superintendent of the New York State Insurance Department is the public official responsible for assessing and collecting retaliatory taxes imposed on foreign insurers. In assessing the amount of retaliatory tax owed, the foreign insurer is generally entitled to a credit for the amount of article 33 franchise taxes it pays to New York (see, Tax Law § 1511 [b] ["In assessing taxes under the reciprocal provisions of (Insurance Law § 1112), credit shall be allowed for any taxes paid under this article”]). This credit operates to equalize the total taxes paid by the foreign insurer to New York — the article 33 franchise taxes plus the retaliatory tax — with the total amount of taxes that would be imposed on a comparable New York insurer doing business in the foreign State.
However, contrary to the general allowance for credit provided by Tax Law § 1511 (b), no credit against retaliatory taxes is allowed for the MCTD tax surcharge (see, Tax Law § 1505-a [d] [8] ["No credit against reciprocal taxes imposed by this state * * * shall be allowed for any taxes paid under this section”]).[3] The issue on appeal is whether the disallowance of this credit results in constitutionally impermissible discrimination against foreign insurers.[4]
*310 II.
The pertinent facts of this case are undisputed. Plaintiff United Services Automobile Association (USAA), a reciprocal insurer organized under the laws of Texas, is authorized to do business in New York State and maintains an office in New York County. Because Texas has a retaliatory tax statute, USAA is subject to New York’s retaliatory tax (see, Insurance Law § 1112 [d]), and because USAA conducts business within the MCTD, it is subject to the MCTD tax surcharge (see, Tax Law § 1505-a [a]).
For tax year 1987, USAA calculated its combined article 33 franchise taxes to be $1,072,313.52, which included $76,389 in MCTD tax surcharge, and remitted that amount to the State of New York. Thereafter, in determining whether USAA owed any retaliatory taxes for tax year 1987, the Superintendent calculated that a New York insurer doing business in Texas comparable to USAA’s business in New York would have owed Texas a total of $1,073,877.40 in taxes. The Superintendent then sent USAA its 1987 Statement of Taxes and Fees under Insurance Law § 1112; instead of demanding the $1,563.88 difference between what USAA already paid in franchise taxes to New York and the amount of taxes Texas would have imposed on a comparable New York insurer, the Superintendent demanded 1987 retaliatory taxes of $77,952.88, the balance of $1,563.88 plus the amount of the MCTD tax surcharge ($76,389), which the Superintendent did not credit in the retaliatory tax computation (see, Tax Law § 1505-a [d] [8]).
USAA remitted the adjusted amount of $1,436.88 to the Superintendent, claiming that it was entitled to a credit for the $76,389 balance representing the MCTD tax surcharge, which it had already paid to New York. The Superintendent thereafter sent USAA a revised statement, noting that the MCTD tax surcharge is not an allowable credit and demanding payment of $76,389. USAA paid the $76,389 under protest. Thus, for tax year 1987, USAA paid New York a total of $1,150,266.40, which, the parties agree, is $76,389 more than the amount a comparable New York insurer would have paid to Texas.
USAA commenced this declaratory judgment action challenging the denial of a credit for the MCTD tax surcharge and *311 moved for summary judgment on the ground that denial of the credit constituted an equal protection violation. The Superintendent cross-moved for summary judgment, seeking a determination of the constitutionality of disallowing the credit.
Supreme Court granted USAA’s motion and denied the Superintendent’s cross motion, holding that Tax Law § 1505-a, insofar as it denied a credit to foreign insurers for the amount of MCTD tax surcharge, violated USAA’s equal protection rights. The court concluded that "[t]he promotion of a domestic interest such as revenue protection, at the expense of foreign insurers who pay retaliatory taxes, is not a legitimate purpose under the equal protection clause.” The Appellate Division affirmed, similarly holding that "[a]n intent to increase or protect revenues at the expense of foreign insurers does not constitute a legitimate governmental purpose sufficient to withstand an equal protection challenge.” (216 AD2d 163.) The Superintendent appeals to this Court as of right (see, CPLR 5601 [b] [1]) and we now affirm.
m.
Although claims of State discrimination against foreign business interests are typically raised as Commerce Clause challenges (US Const, art I, § 8, cl [3]), the retaliatory tax statute at issue in this case applies to the business of insurance. Under the McCarran-Ferguson Act (15 USC §§ 1011-1015), State regulation of the business of insurance is exempt from the strictures of the Commerce Clause (see, Western & S. Life Ins. Co. v Board of Equalization, 451 US 648, 654). Moreover, the protection of the Privileges and Immunities Clause of article IV (US Const, art IV, § 2, cl [1]), which prohibits State discrimination against nonresident United States "citizens,” does not extend to corporations (see, Western & S., supra, at 656). As a result, USAA’s constitutional challenge is predicated solely on the Equal Protection Clause.
The Equal Protection Clause of the Federal Constitution provides: "No State shall * * * deny to any person within its jurisdiction the equal protection of the laws” (US Const, 14th Amend, § 1; accord, Santa Clara County v Southern Pac. R. R. Co., 118 US 394, 396 [corporations are "persons” under 14th Amend]). A State tax statute will withstand an equal protection challenge if the classification at issue (i) has a legitimate purpose, and (ii) is rationally related to achievement of that purpose (see, Western & S., 451 US, at 668, supra).
The necessary backdrop for analysis of the issue on appeal is the case of Western & Southern, in which the United States *312 Supreme Court upheld, against an equal protection challenge, California’s system of retaliatory taxation (see, id., at 674). The California statute discriminated against foreign insurers by imposing, in addition to the taxes imposed on all insurance companies doing business within the State, a retaliatory tax on foreign insurers representing the difference between the total tax bill under California law and the total amount of taxes the foreign insurer’s State would have imposed on a hypothetical California insurer doing a comparable level of business in the foreign State (see, id., at 651).
The Supreme Court affirmed the constitutionality of this retaliatory tax statute, concluding that its legitimate purpose is "to promote the interstate business of domestic insurers by deterring other States from enacting discriminatory or excessive taxes” (id., at 668), a purpose that was served by matching the tax burden of foreign insurers within its borders with that of domestic insurers in the foreign State. However, the Supreme Court was careful to note that the purpose of California’s retaliatory tax statute "is not to generate revenue at the expense of out-of-State insurers, but to apply pressure on other States to maintain low taxes on California insurers” (id., at 669-670).
The Supreme Court’s intimation in Western & Southern that generating tax revenue at the sole expense of foreign insurers would not constitute a legitimate purpose was subsequently confirmed in Metropolitan Life Ins. Co. v Ward (470 US 869). Ward involved a challenge to Alabama’s domestic preference tax statute, which imposed a higher gross premiums tax rate on foreign insurers than on domestic insurers. The Supreme Court contrasted the legitimate purpose in Western & Southern with the raw preference for domestic over foreign insurers manifested in the Alabama statute: "Alabama’s aim to promote domestic industry is purely and completely discriminatory, designed only to favor domestic industry within the State, no matter what the cost to foreign corporations also seeking to do business there. Alabama’s purpose, contrary to California’s, constitutes the very sort of parochial discrimination that the Equal Protection Clause was intended to prevent” (470 US, at 878). The Supreme Court concluded that "a State may not constitutionally favor its own residents by taxing foreign *313 corporations at a higher rate solely because of their residence” (id.).[5]
While it is true that legitimacy of purpose and rationality, not strict equality, are the benchmarks of equal protection in the tax realm, Western & Southern and Ward together teach us that retaliatory taxation is legitimate precisely because it aims to equalize domestic and foreign taxation.[6] The rule derived from these cases is that a system of retaliatory taxation, which by definition discriminates between domestic and foreign insurance companies, is constitutionally sound insofar as it aims to equalize the tax burden of domestic and foreign insurers, but the imposition of retaliatory tax beyond the point of equalization solely to generate revenue at the expense of foreign insurers lacks legitimacy. In other words, absent a legitimate purpose apart from simple revenue creation, a State may only retaliate to the extent of the difference between its actual and the foreign State’s hypothetical tax bill.
IV.
The parties agree that the retaliation in this case extended beyond the point of equalization. For tax year 1987, US A A paid to New York a total of $1,150,266.40 in taxes for the privilege of conducting an insurance business in New York, which is $76,389 more than a comparable New York insurer would have been taxed by Texas. Therefore, we must evaluate *314 whether the denial of a credit for the MCTD tax surcharge against retaliatory taxes serves a legitimate purpose.
The first stated purpose is to protect the MCTD fund. In this connection, the Superintendent argues that were USAA granted a credit for the MCTD tax surcharge, it would effectively avoid paying the surcharge altogether. This is not so. USAA has already paid the MCTD tax surcharge and is not seeking a refund of those moneys. The credit sought by USAA, rather than depleting the MCTD fund, would serve only to reduce, by the amount of MCTD tax surcharge already paid, the amount of retaliatory taxes imposed on USAA.
The Superintendent alternatively contends that the purpose of denying the credit is to protect New York’s general tax fund. The Superintendent argues that if USAA were granted the credit, its payment of the MCTD tax surcharge, which is earmarked for the MCTD fund, would have the effect of reducing by a corresponding amount the amount of retaliatory taxes paid by USAA into the general fund. This is undeniably correct; the higher the amount of the credit against the retaliatory tax, the lower the retaliatory tax will be. However, the claimed purpose of protecting the general fund is not legitimate because it is purely an effort to raise revenue at the sole expense of foreign insurers. The Superintendent’s argument is based on the erroneous presupposition that the State has a fixed, independent right to retaliatory taxes divorced from the amount of taxes the State actually collects from the foreign insurer. To the contrary, the validating purpose of retaliatory taxation — to equalize the tax burden of domestic and foreign insurers — requires that the retaliatory tax assessment take into account the amount of taxes already paid to the State by the foreign insurer. The only purpose served by disallowing the credit is revenue generation, but since this redounds to the exclusive detriment of foreign insurers, it is illegitimate and will not support the State’s retaliation beyond the point of equalization.
Moreover, the fact that New York has created more than one fund into which the article 33 franchise taxes are deposited does not detract from the economic reality that USAA pays and the State collects these various franchise taxes for the privilege of doing business in New York. It is this economic reality that the retaliatory tax computation must reflect. What New York thereafter chooses to do with the moneys, or into which particular funds they flow, is unrelated to the residence-based discrimination against foreign insurers and cannot *315 legitimatize the unconstitutional purpose of generating tax revenue at the exclusive expense of foreign insurers.
, Based on the foregoing, we conclude that denial of the credit is unsupported by a legitimate purpose and therefore violates the Equal Protection Clause.[7] Our holding in this case is consistent with Matter of Industrial Indent. Co. v Cooper (81 NY2d 50), in which we held that no credit need be given under the retaliatory tax statute for a commercial rent tax assessed pursuant to Administrative Code of the City of New York § 11-702. Unlike the MCTD tax surcharge, which is one of the four article 33 franchise taxes and is imposed on all insurance companies within the MCTD for the privilege of conducting an insurance business in New York, the commercial rent tax in that case was held not to be a tax imposed "for the privilege of doing business” within the meaning of Insurance Law § 1112, but was a quasi-property tax calculated as a percentage of the company’s annual lease payments and therefore fell beyond the scope of the retaliatory tax scheme (see, id., at 54).
In summary, the constitutional problem identified in this case is neither the imposition of retaliatory taxes under Insurance Law § 1112 nor the imposition of the MCTD tax surcharge under Tax Law § 1505-a. Rather, our holding of unconstitutionality is based on and limited to the discrimination that results from the interplay of the two statutes — where the foreign insurer is denied a credit against retaliatory taxes for the amount of MCTD tax surcharge — producing retaliation beyond the point of equalization.
Accordingly, the order of the Appellate Division should be affirmed, with costs.
*316 Chief Judge Kaye and Judges Simons, Titone, Bellacosa, Smith and Levine concur.
Order affirmed, with costs.

. Generally, the MCTD tax surcharge is a surcharge of 17% on the taxes imposed on the insurer pursuant to Tax Law §§ 1501 and 1510 allocable to business activity conducted in the MCTD (see, Tax Law § 1505-a [a]). The MCTD is the region encompassing the Counties of New York, Bronx, Kings, Queens, Richmond, Dutchess, Nassau, Orange, Putnam, Rockland, Suffolk and Westchester (see, Public Authorities Law § 1262).

. Insurance Law § 1112 (a) (1) provides: "If, by the laws, or the action of any public official, of any other state, any insurer organized or domiciled in this state, or its duly authorized agents, shall be, required to deposit securities in such other state to protect policyholders or for any other purpose, or shall be required to pay taxes, fines, penalties, fees for licenses or certificates of authority or any other sum for the privilege of doing business in such other state, or shall be subjected to any restrictions, obligations, conditions or penalties, imposed for such privilege, and such requirements are greater than those required of similar insurers organized or domiciled in such other state by the laws of this state for the privilege of doing business herein, then all similar insurers organized or domiciled in such other state and their duly authorized agents in this state shall make like deposits for like purposes with the superintendent, and pay him for taxes, fines, penalties, fees for licenses or certificates of authority or for any other requirement for the privi *309 lege of doing business in this state, an amount determined in the manner prescribed by such other state, and shall be subjected to such greater requirements imposed by such other state upon similar insurers of this state and their duly authorized agents.”

. Although the parties refer interchangeably to sections 1505-a (c) and 1505-a (d) (8), subdivision (c) denies credit against the MCTD tax surcharge, not against the retaliatory tax (see, Tax Law § 1505-a [c] ["The credits set forth in section fifteen hundred eleven of this article shall not be allowed against the tax surcharge imposed by this section”]).

. While the statute denies this credit to foreign insurers against retaliatory taxes owed to New York, the statute grants to domestic insurers a credit against the MCTD tax surcharge in the amount of 90% of retaliatory taxes *310 paid by the domestic insurer to a foreign State directly attributable to New York’s imposition of the MCTD tax surcharge (see, Tax Law § 1505-a [d] [2]). United Services Automobile Association does not seek this 90% credit, which, by definition, is available only to domestic insurers, and does not base its equal protection argument on its ineligibility for this credit.

. Thus, although it has been stated that "in taxation, even more than in other fields, legislatures possess the greatest freedom in classification” (Madden v Kentucky, 309 US 83, 88), this has proven less true when discrimination is targeted at nonresidents, who are unrepresented in the State Legislature and peculiarly vulnerable to local bias (see, Ward, 470 US, at 878, supra; Williams v Vermont, 472 US 14, 23 [invalidating Vermont vehicle use tax statute; "A State may not treat those within its borders unequally solely on the basis of their different residences or States of incorporation”]; cf., Austin v New Hampshire, 420 US 656, 662).

. This view accords with the prevailing conception of retaliatory tax statutes (see, 1 Couch, Insurance § 3:36, at 3-55 [Russ & Segalla — 3d ed] ["the primary object of retaliatory acts against foreign corporations is not to raise revenue, but to secure for the insurance companies of the enacting state even-handed treatment by the legislatures of other states”]; 19B Appleman, Insurance Law and Practice § 10929, at 24 ["Retaliatory taxation is designed to keep other states from discriminating against companies domestic to the forum, so as to demand an equalization of tax burdens as to such companies operating within a foreign state”] [footnotes omitted]; 44 CJS, Insurance, § 76 ["While they are called 'retaliatory’ statutes, their true object is one of comity and they are designed to create substantial equality of burdens in respect of foreign and domestic insurance companies”]).

. We also note that the MCTD credit granted by New York to domestic insurers (see, Tax Law § 1505-a [d] [2]) magnifies the disparate tax treatment of domestic and foreign insurers. However, this credit, which by definition is available only to domestic insurers, is unnecessary to the holding of unconstitutionality in this case. Thus, the Superintendent’s vigorous defense in support of denying this credit to foreign insurers is misdirected. In addition, the Superintendent’s reliance on the purpose underlying the grant of this domestic credit, to "protect New York-based insurers from unintended burdens arising from the imposition of the [MCTD] surcharge” (Mem of Div of Budget, Bill Jacket, L 1984, ch 999), is misplaced. The goal of protecting New York insurers from unintended tax increases has no bearing whatsoever on the issue presented in this case of whether the State has a legitimate purpose to deny to foreign insurers a credit against retaliatory taxes for the amount of MCTD tax surcharge already paid to the State.