STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, STATE FARM FIRE
AND CASUALTY COMPANY, STATE FARM GENERAL INSURANCE COMPANY,
PLAINTIFFS v. JAMES E. LONG, COMMISSIONER OF INSURANCE OF THE
STATE OF NORTH CAROLINA, AND MURIEL K. OFFERMAN, SECRETARY,
NORTH CAROLINA DEPARTMENT OF REVENUE, DEFENDANTS

No. COA97-801

(Filed 7 April 1998)

### Insurance § 10 (NCI4th)— out-of-state insurer—retaliatory premium tax—computation—exclusion of regulatory charge—not unconstitutional

The trial court did not err by granting summary judgment for defendants in an action in which plaintiffs claimed a refund of overpaid retaliatory taxes levied against insurance companies chartered in states which impose premium taxes upon North Carolina insurers, alleging that the effect of excluding the regulatory charge imposed by N.C.G.S. § 58-6-25 was to unconstitutionally increase the retaliatory premium tax. Applying the test in *San Juan Cellular Telephone Co. v. Public Service Com'n of Puerto Rico*, 967 F. 2d. 683, the "ultimate use" of the charge is regulation and the charge is not a tax. Alternatively, plaintiffs did not meet their burden of establishing that the exclusion of the surcharge from the tax computation is unconstitutional. N.C.G.S. § 105-228.8.

Judge GREENE dissenting.

Appeal by plaintiffs from order entered 17 April 1997 by Judge Narley L. Cashwell in Wake County Superior Court. Heard in the Court of Appeals 16 February 1998.

This action was brought under G.S. 105-267 for refund of allegedly excessive retaliatory premium taxes paid by plaintiff State Farm Automobile Insurance Company ("State Farm") to the Commissioner of Insurance of the State of North Carolina for the years 1993 and 1994. State Farm is a foreign corporation chartered in Illinois but licensed to do business as an insurer in North Carolina.

The facts are not in dispute. G.S. 105-228.5 requires all insurers doing business in North Carolina to pay a premium tax of 1.9% on gross premiums received from business done in North Carolina in the preceding calendar year. North Carolina also imposes an insurance

regulatory charge of 7.25% of the premium tax paid pursuant to G.S. 58-6-25. The regulatory charge is a percentage which the General Assembly may vary annually to make the amount collected cover the projected operating deficit of the Department of Insurance. The regulatory charge is paid into the Department of Insurance Fund, a discrete fund account within the State Treasury.

North Carolina also imposes a retaliatory premium tax upon certain foreign insurers pursuant to G.S. 105-228.8. G.S. 105-228.8(a) states:

> When the laws of any other state impose, or would impose, any premium taxes, upon North Carolina insurers doing business in the other state that are, on an aggregate basis, in excess of the premium taxes directly imposed upon similar insurers by the statutes of this State, the Commissioner of Insurance shall impose the same premium taxes, on an aggregate basis, upon the insurers chartered in the other state doing business or seeking to do business in North Carolina.

In computing the retaliatory premium tax, G.S. 105-228.8(e) provides that the tax should be calculated without regard to the regulatory charge imposed by G.S. 58-6-25.

In 1993 and 1994, North Carolina imposed a premium tax of 1.9%. Illinois' premium tax was 2.0%. In accordance with G.S. 105-228.8, North Carolina imposed on plaintiffs a .1% retaliatory tax charge on insurance premiums.

On 22 September 1995, plaintiffs filed this action pursuant to G.S. 105-267 for refund of overpayment of the retaliatory taxes. Plaintiffs allege that the exclusion in G.S. 105-228.8(e) "has the effect of increasing the retaliatory premium tax by reducing the amount deemed paid in North Carolina premium taxes by the foreign insurer." Plaintiffs contend that if the regulatory charge was considered a premium tax, then no retaliatory tax would be due for 1993 and 1994. Plaintiffs allege that G.S. 105-228.8(e) "violates the equal protection clause of the United States Constitution by imposing a discriminatory tax upon foreign insurers . . . which bears no rational relationship to a legitimate state purpose." Plaintiffs also allege that the statute violates Article 5, Section 2 of the North Carolina Constitution "by levying taxes which are not uniform." Plaintiffs seek refund of $787,131.10 plus interest at the legal rate of 8% from dates of payment to the state.

On 30 August 1996, defendants moved for summary judgment. On 27 November 1996, plaintiffs filed a cross-motion for summary judgment. Following a hearing, on 16 April 1997 the trial court allowed defendants' motion for summary judgment and denied plaintiffs' motion for summary judgment. Plaintiffs appeal.

*Womble Carlyle Sandridge & Rice, PLLC, by Jasper L. Cummings, Jr., for plaintiff-appellants.*

*Attorney General Michael F. Easley, by Assistant Attorney General Sue Y. Little and Special Deputy Attorney General George W. Boylan, for the defendant-appellees.*

EAGLES, Judge.

The only issue before us is whether the trial court erred in denying plaintiffs' motion for summary judgment and granting defendants' motion for summary judgment. Plaintiffs argue that the summary judgment order was in error because the insurance regulatory charge is a tax and its exclusion from the retaliatory tax computation violates the federal and state constitutions. After careful consideration of the record, briefs and contentions of the parties, we affirm.

Plaintiffs' first argument is that the regulatory charge is a tax. Plaintiffs make five contentions. First, plaintiffs contend that the statutes show that the regulatory charge is a tax. The plaintiffs claim that statutes denominate the charge as a tax, it is measured like a tax, it is levied during the "taxable year," and it appears in the General Statutes under "License Fees and Taxes" and is the only item in the Article that is not clearly a fee. Second, plaintiffs contend that case law requires the regulatory charge to be treated as a tax. Plaintiffs rely on *American Equitable Assurance Co. of N.Y. v. Gold,* 249 N.C. 461, 465, 106 S.E.2d 875, 878 (1959) to contend that a levy must be treated as a tax unless the legislature specifically makes its payment a condition of writing insurance. Plaintiffs argue that there is no statement in the statute making payment of the regulatory charge a condition of writing insurance. Third, plaintiffs urge that "the collection of a tax for a designated use does not make it less a tax," and conclude that " 'taxes' are not limited to levies that fall on all taxpayers or that are available for all governmental uses." Fourth, plaintiffs argue that the regulatory charge was not a user fee, because it was not a quid pro quo for anything received by the plaintiff. Plaintiffs maintain that it was just a tax to raise revenue. Plaintiffs argue that *North Carolina Ass'n of ABC Boards v. Hunt,* 76 N.C. App. 290, 332

S.E.2d 693, *disc. rev. denied,* 314 N.C. 667, 336 S.E.2d 400 (1985), cited by defendants, should be limited to its facts. Finally, plaintiffs urge that this Court "should discourage legislative legerdemain." Plaintiffs argue that this Court need not determine the purpose of the charge and the Insurance Fund, but need only conclude that the charge was a tax because it was not a license fee or a user fee.

Once the insurance regulatory charge is determined to be a tax, plaintiffs next argue that the retaliatory tax violates the equal protection clause of the Constitution because it is a discriminatory tax with no legitimate purpose. *See Metropolitan Life Ins. Co. v. Ward,* 470 U.S. 869, 84 L.Ed.2d 751, *reh'g denied,* 471 U.S. 1120, 86 L.Ed.2d 269 (1985). Plaintiffs argue that retaliatory taxes are allowed only if they reach parity of treatment. "[T]he imposition of retaliatory tax beyond the point of equalization solely to generate revenue at the expense of foreign insurers lacks legitimacy." *United Services Auto. Ass'n v. Curiale,* 88 N.Y.2d 306, 313, 668 N.E.2d 384, 388, 645 N.Y.S.2d 413, 417 (1996).

Defendants argue that the regulatory charge is not a tax. They contend that because the charge is neither levied nor collected as a contribution to the maintenance of the general government, the regulatory charge does not constitute a tax. Proceeds from the regulatory charge do not go to the "general fund of the state" for the general maintenance of the government, but to a special discrete fund maintained by the State Treasurer, the Department of Insurance Fund. Defendants rely on *North Carolina Ass'n of ABC Boards v. Hunt,* 76 N.C. App. 290, 332 S.E.2d 693, *disc. rev. denied,* 314 N.C. 667, 336 S.E.2d 400 (1985). Defendants contend that the holding of *Hunt* was that a surcharge on liquor was not a tax, because the statute imposed "only the cost of regulation," and the revenue from the surcharge did not go "to the general maintenance and expense of government." *Id.* at 293, 332 S.E.2d at 695. *See also Memphis Natural Gas Co. v. McCanless,* 183 Tenn. 635, 651, 194 S.W.2d 476, 483 (1946) ("To be properly defined as 'taxes' the fees must be paid into the public treasury as a part of the general revenue and be subject to disbursement for the 'general public need.'"). Accordingly, defendants argue that the regulatory charge is not a tax and that the trial court's order should be affirmed.

The key issue here is whether the regulatory charge is a tax. In comparing taxes with regulatory fees, the court in *San Juan Cellular Telephone Co. v. Public Service Com'n of Puerto Rico,* 967 F.2d 683 (1st Cir. 1992) stated:

The classic 'tax' is imposed by a legislature upon many, or all, citizens. It raises money, contributed to a general fund, and spent for the benefit of the entire community. The classic 'regulatory fee' is imposed by an agency upon those subject to its regulation. It may serve regulatory purposes directly by, for example, deliberately discouraging particular conduct by making it more expensive. *Or, it may serve such purposes indirectly by, for example, raising money placed in a special fund to help defray the agency's regulation-related expenses.*

*Id.* at 685 (citations omitted) (emphasis added). In applying *San Juan Cellular* to determine whether a charge is a tax, courts have developed a three-part test considering "(1) the entity that imposes the assessment; (2) the parties upon whom the assessment is imposed; and (3) whether the assessment is expended for general public purposes, or used for the regulation or benefit of the parties upon whom the assessment is imposed." *Bidart Brothers v. California Apple Commission*, 73 F.3d. 925, 931 (9th Cir. 1996). *See also Cumberland Farms, Inc. v. Tax Assessor, State of Maine*, 116 F.3d 943 (1st Cir. 1997).

Applying the *San Juan Cellular* test, we hold that the regulatory charge imposed by G.S. 58-6-25 is not a tax. We note that the charge imposed here is imposed by the General Assembly, not by an administrative agency. This factor weighs in favor of a finding that the charge is a tax. *See Bidart*, 73 F.3d at 931. However, this factor is not dispositive. While the charge is imposed by the General Assembly, it is also imposed only upon insurance companies. "An assessment imposed upon a broad class of parties is more likely to be a tax than an assessment imposed upon a narrow class." *Id.* Accordingly, after applying the first two prongs of the *San Juan Cellular* test, the nature of the regulatory charge remains somewhat unclear. "Where the first two factors are not dispositive, courts examining whether an assessment is a tax 'have tended . . . to emphasize the revenue's *ultimate use.*'" *Bidart*, 73 F.3d at 932 (quoting *San Juan Cellular*, 967 F.2d at 685) (emphasis added). *See also Cumberland Farms*, 116 F.3d at 947 ("the most salient factor in the decisional mix concerns the destination of the revenues raised by the impost").

In determining the nature of the regulatory charge under the final prong of the *San Juan Cellular* test, we find persuasive the Texas Court of Appeals decision in *Prudential Health Care Plan, Inc. v. Commissioner of Insurance*, 626 S.W.2d 822 (1981). In *Prudential,*

Prudential Health Care Plan, Inc. sued to recover $90,627.89 paid under protest to the Comptroller of Public Accounts pursuant to the requirements of article 20A.33 of the Texas Insurance Code. *Id.* at 825. That statute provided as followed:

> (a) To defray the expense of carrying out the provisions of this Act, there shall be annually assessed and collected by the State of Texas, through the State Board of Insurance, from each corporation operating under this Act, in addition to all other taxes now imposed, or which may hereafter be imposed by law, a tax of one percent of all revenues received by such corporation in return for issuance of health maintenance certificates or contracts in this state, according to the reports made to the State Board of Insurance as required by law. *Said taxes, when collected, shall be placed in a separate fund with the State Treasurer which shall be kept separate and apart from other funds and money in his hands, and shall be known as the Health Maintenance Organization Fund, said fund to be expended during the current and succeeding years, or so much thereof as may be necessary, in carrying out such provisions. Such expenditures shall not exceed in the aggregate the sum assessed and collected from such corporations; and should there be an unexpended balance at the end of any year, the State Board of Insurance shall reduce the assessment for the succeeding year so that the amount produced and paid into the State Treasury together with said unexpended balance in the treasury will be sufficient to pay all expenses of carrying out the provisions of this Act,* which funds shall be paid out and filed by a majority of the State Board of Insurance when the comptroller shall issue warrants therefor. Any amount remaining in said fund at the end of a year shall be carried over and expended in accordance with the provisions of this article during the subsequent year or years. Provided, that no expenditures shall be made from said fund except under the authority of the legislature as set forth in the general appropriations bill.

*Id.* at 825-26 (emphasis added). Prudential attacked the constitutionality of article 20A.33, claiming that the article contravened the Texas constitutional provision "requiring that all taxation, specifically including occupation taxes, be 'equal and uniform.' " *Id.* at 826. The Commissioner responded that

> the charges imposed by article 20A.33 do not contravene the 'equal and uniform' requirement of [the Texas Constitution]

because they are not taxes at all, being only 'fees' imposed for regulatory purposes under the police power, and not the taxing power, of the sovereign, notwithstanding their denomination as 'taxes.'

*Id.*

The Court found in favor of the Commissioner, determining that the charges were fees, not taxes:

We believe there are sufficient indicia of the legislative intent to warrant our holding that the charge authorized by subdivision (a) is intended primarily for regulation and not for revenue. While no single indicia standing alone compels the holding, the several do when considered together, viz.: the assignment of the revenue to a particular fund to be used solely for carrying out the regulatory purposes of the statute; the annual adjustments required of the Commissioner to produce only that amount of revenue needed to pay the cost of regulation . . . and authority for the charge is found among numerous other powers, requirements and conditions which are, without question, purely regulatory in nature, in a statute having the general purpose of regulation. Therefore, in accordance with the rule that the primary purpose of such a charge determines whether it is a tax or a regulatory fee, we hold it to be the latter in this case.

*Id.* at 829 (citations omitted).

In comparing the regulatory charge here with the assessment challenged in *Prudential*, we find similarly that the "ultimate use" of the revenue warrants our holding that the regulatory charge is not a tax. First, in *Prudential*, the fees, when collected, were placed is a segregated account called the Health Maintenance Organization Fund. *Id.* at 825. Here, G.S. 58-6-25(d) required that "proceeds of the charge levied . . . shall be credited to the [Insurance] Fund . . ." and not the general fund of the state. Second, the funds in *Prudential* were to be used only to defray the cost of regulation. *Id.* The statute in the instant case, G.S. 58-6-25(a), stated that the charge "is levied on each insurance company . . . to defray the cost to the Department of regulating the insurance industry . . ." and (d) stated that the proceeds "shall be used only to pay the expenses of the Commissioner and the Department that are incurred in regulating the insurance industry . . . and the general administrative expenses of the State incident thereto." Third, in *Prudential*, annual adjustments were required of the Commissioner to assure that the fee produced

only the amount necessary to pay the cost of regulation. *Id.* at 829. Here, G.S. 58-6-25(b) requires similar adjustments, stating that the rate charged "may not exceed the rate necessary to generate funds sufficient to defray the estimated cost of the operations of the Department for each upcoming fiscal year." Accordingly, we hold that the "ultimate use" of the insurance regulatory charge is regulation and the charge is not a tax.

Plaintiffs alternatively argue that even if the surcharge was not a tax, its exclusion from the retaliatory tax computation was still unconstitutional. Plaintiffs argue that aggregation of all tax and non-tax levies is the only constitutionally permissible avenue to equalization. Defendants respond that plaintiffs have not satisfied their burden of establishing the unconstitutionality of G.S. 105-228.8, arguing that "[t]here is nothing invalid or suspect about the decision of the legislature to require . . . a comparison of only premium taxes paid by a foreign insurer and a domestic insurer for retaliatory purposes." Defendants contend that non-tax charges are dealt with in G.S. 58-16-25. Accordingly, defendants maintain that G.S. 105-228.8 is not unconstitutional and summary judgment should be affirmed.

We hold that the plaintiffs have not met their burden of establishing the unconstitutionality of G.S. 105-228.8. We note that "insurance commissioners in some states consider only the items of tax on premium income and fees paid and disregard other burdens because of the practical difficulties involved in computing and comparing the varying exactions." *Republic Ins. Co. v. Commissioner of Taxation,* 272 Minn. 325, 331, 138 N.W.2d 776, 780 (1965) (citing 39 Notre Dame Lawyer 243). Accordingly, we hold that it was not constitutionally invalid for the statute to require a comparison of only premium taxes paid by a foreign insurer for retaliatory purposes.

In sum, because the "ultimate use" of the regulatory charge is regulation, we hold that it was not a tax. Further, the exclusion of the charge in the computation of plaintiff's retaliatory premium tax liability was not unconstitutional. The order of the trial court is affirmed.

Affirmed.

Judge HORTON concurs.

Judge GREENE dissents.

STATE FARM MUT. AUTO. INS. CO. v. LONG

[129 N.C. App. 164 (1998)]

Judge GREENE dissenting.

The majority holds that the insurance "regulatory charge" levied pursuant to N.C. Gen. Stat. § 58-6-25 is "not a tax." The principle bases for this holding are that the monies were placed in the "Insurance Fund" and were used only to defray the cost of regulating insurance companies.

I do not agree for two distinct reasons. First, our Supreme Court has specifically held that the segregation of funds collected by the State into a special account to be used only for a "special purpose" does not disqualify the classification of the levy as a tax. *Insurance Co. v. Unemployment Compensation Com.*, 217 N.C. 495, 499, 8 S.E.2d 619, 621 (1940). Second, even if the majority correctly states the rule for determining the proper classification of a levy, in this case the revenue from the "regulatory charge" is not used exclusively for the regulation of the insurance industry. Indeed, the statute permits the revenue to be used by the Commissioner of Insurance (Commissioner) to "pay the expenses . . . incurred in regulating the insurance industry <u>and other industries in this State . . . .</u>" N.C.G.S. § 58-6-25(d) (1994) (emphasis added). Some examples of "other industries" regulated by the Commissioner include: continuing care facilities, N.C.G.S. § 58-64-1 (1994); dental service corporations, N.C.G.S. § 58-65-1 (1994); health maintenance organizations, N.C.G.S. § 58-67-1 (1994); motor clubs, N.C.G.S. § 58-69-1 (1994); collection agencies, N.C.G.S. § 58-70-1 (1994); and bail bondsmen, N.C.G.S. § 58-71-1 (1994).

The "regulatory charge" in this case constitutes a tax because it is assessed by the General Assembly and used, in the discretion of that body, to defray the cost of operating the North Carolina Department of Insurance, which has broad powers beyond the regulation of the insurance industry. *See Black's Law Dictionary* 1457 (6th ed. 1990) (a tax is generally defined as "[a]n enforced contribution of money . . . assessed in accordance with some reasonable rule or apportionment by authority of a sovereign state on persons or property within its jurisdiction for the purpose of defraying the public expenses"); N.C.G.S. § 58-6-25(d) (proceeds placed in Insurance Fund "may be spent only pursuant to appropriation by the General Assembly" and used to pay the expenses . . . incurred in regulating the insurance industry and other industries in this State and the general administrative expenses of the State incident thereto").

Because I read the "regulatory charge" as a tax, the statutory provision (N.C. Gen. Stat. § 105-228.8(e)) excluding its consideration in the computation of the retaliatory premium tax (N.C. Gen. Stat. § 105-228.8(a)) is unconstitutional in that it violates the Equal Protection Clause. This is so because it allows North Carolina to impose a more onerous tax on the foreign insurance company doing business in North Carolina than would be imposed on a North Carolina insurance company doing business in the foreign insurer's state. *See Western and Southern Life Ins. Co. v. Bd. of Equalization*, 451 U.S. 648, 68 L. Ed. 2d 514 (1981); *United Services Auto. Ass'n v. Curiale*, 668 N.E.2d 384, 388 (N.Y. 1996) (retaliatory taxes are permitted only to the "point of equalization").

In this case, the plaintiffs were charged a 0.1 per cent retaliatory tax, which sought to equalize the tax assessments between North Carolina and Illinois (the home state of the defendants). Additionally, however, the plaintiffs were required to pay 7.25 per cent of the premium tax, as a "regulatory charge." There is no evidence that Illinois has any assessment beyond the premium tax. The plaintiffs were thus required to pay a larger retaliatory tax than needed to equalize the taxes charged in North Carolina and Illinois. I would therefore reverse the entry of summary judgment for the defendants and remand for entry of summary judgment for the plaintiffs.