PREMERA BLUE CROSS, a Washington non-profit corporation, Appellant,

v.

STATE of Alaska, DEPARTMENT OF COMMERCE, COMMUNITY & ECONOMIC DEVELOPMENT, DIVISION OF INSURANCE, Appellee.

Nos. S–11486, S–11785.

Supreme Court of Alaska.

Nov. 9, 2007.

Stephan H. Williams, Law Office of Stephan Williams, Anchorage, for Appellant.

Signe P. Andersen, Assistant Attorney General, Anchorage, and David W. Márquez, Attorney General, Juneau, for Appellee.

Before: BRYNER, Chief Justice, MATTHEWS, FABE, and CARPENETI, Justices.

*OPINION*

FABE, Justice.

## I. INTRODUCTION

These consolidated appeals concern Alaska's retaliatory tax statute as applied to Premera Blue Cross, a Washington non-profit corporation registered as a hospital and medical services corporation in Alaska. By stipulation and by engaging Blue Cross's refund request on the merits, the Division of Insurance waived its right to argue that Blue Cross should be precluded from seeking a refund because it did not pay its 1995 and 1996 taxes under formal protest. We therefore reach the merits of this case, concluding that retaliatory taxes apply to Blue Cross. We conclude that the Division acted reasonably in implementing the retaliatory tax statute, and specifically, in excluding payments that Blue Cross made to the Alaska Comprehensive Health Insurance Association and the Alaska Small Employers Health Reinsurance Association. The retaliatory tax statute's plain language, the policies underlying that statute, and deference to agency expertise and its established interpretation of the statute, all support this outcome. Accordingly, we affirm the ruling made by the Director of the Division of Insurance. We also agree with the superior court that AS 21.09.270 does not conflict with Alaska's equal protection and substantive due process clauses.

## II. FACTS AND PROCEEDINGS

Retaliatory tax statutes "in effect, substitute the general tax laws of the foreign insurer's home state for the general tax laws of the state applying the retaliatory statute whenever the general tax laws of the foreign insurer's home state are more burdensome

than the general tax laws of the state applying the regulatory statute."[1] Their "principal purpose ... is to promote the interstate business of domestic insurers by deterring other States from enacting discriminatory or excessive taxes."[2]

Blue Cross is a Washington nonprofit corporation registered as a hospital and medical services corporation under chapter 21.87 of the Alaska Statutes.[3] The Alaska Division of Insurance (the Division) is the agency principally charged with regulating insurers conducting business in Alaska, including hospital and medical services corporations. The Division is also charged with administering and collecting both premium taxes and retaliatory taxes. To calculate retaliatory taxes, the Division has used the same forms and instructions since at least 1986 and takes the position, which Blue Cross disputes, that the forms and instructions reflect an administrative interpretation of the retaliatory tax statute.

Blue Cross is a member of the Alaska Comprehensive Health Insurance Association (ACHIA) and the Small Employers Health Reinsurance Association (SEHRA). Membership in both ACHIA and SEHRA is a condition of doing business in Alaska.

ACHIA "make[s] available to residents who are high risk[,] eligible for and covered by Medicare, 65 years of age or older, and eligible ... one Medicare supplement plan that meets ... minimum policy standards and minimum benefit standards."[4] In order to fund the plan, members share in pro rata expenses.[5] If a member fails to pay its pro rata share, the director "may have the member's certificate of authority revoked."[6]

SEHRA was enacted "to promote the availability of health insurance coverage to small employers regardless of their health status or claims experience."[7] As with ACHIA, payments are made by members to cover the costs of the association in proportion to "each reinsuring insurer's share of total premiums."[8] The statutes creating SEHRA have recently been repealed. But for the purposes of this litigation, the parties stipulated that failure to pay a SEHRA charge was grounds for revocation of a certificate of authority to do business in Alaska under AS 21.09.150(a).

The State of Washington has a program similar to ACHIA, the Washington Health Insurance Pool (WHIP), which makes adequate levels of insurance available to residents of Washington who are otherwise considered uninsurable or who are underinsured.[9]

In 1995 and 1996 Blue Cross made payments to ACHIA in the amount of $1,502,224 and payments to SEHRA in the amount of $43,918. Blue Cross accounted for ninety-five percent of its ACHIA payments and 100 percent of its SEHRA payments as paid claims on its premium tax statement. Five percent of these payments were recorded on its books as payments of administrative expenses and were not incorporated into the premium tax. Blue Cross paid these taxes and fees in 1995 and 1996 without formal protest.

In 1997 Blue Cross sent a letter to the Division requesting a refund of excess retaliatory taxes it paid in 1995 and 1996 because it did not include the 1995 and 1996 payments it made to ACHIA in its calculations of its retaliatory tax obligation. On June 30,

1.   Lee R. Russ, Annotation, *Construction, Application and Operation of State "Retaliatory" Statutes Imposing Special Taxes or Fees on Foreign Insurers Doing Business Within the State*, 30 A.L.R.4th 873 § 1(a) (1984).

2.   *Western & Southern Life Ins. Co. v. State Bd. of Equalization of California*, 451 U.S. 648, 668, 101 S.Ct. 2070, 68 L.Ed.2d 514 (1981).

3.   The facts in this case are not in dispute. In connection with Blue Cross's tax refund request before the Director of the Division of Insurance, the parties entered into a stipulation of facts

"with respect to that refund request and any related judicial appeals or proceedings."

4.   AS 21.55.100.

5.   AS 21.55.220(c).

6.   AS 21.55.220(d).

7.   Ch. 39, § 1, SLA 1993.

8.   AS 21.56.050(d).

9.   Wash. Rev.Code § 48.41.020.

1999, the Director of the Division [10] issued an order denying Blue Cross's refund request on its merits. For its findings of fact, the Director adopted the facts stipulated to by the parties. When drawing its legal conclusions, the Director considered the language of AS 21.09.270.

Alaska Statute 21.09.270(a) provides, in part:

> If, under the laws of another state or foreign country, taxes, licenses, and other fees, in the aggregate, and fines, penalties, deposit requirements, or other material obligations, prohibitions, or restrictions are or would be imposed upon Alaska insurers ... that are in excess of the taxes, licenses, and other fees, in the aggregate, or that are in excess of the fines, penalties, deposit requirements, or other obligations, prohibitions, or restrictions directly imposed upon similar insurers ... of another state or country under the statutes of this state ... the same taxes, licenses, and other fees, in the aggregate, or fines, penalties, or deposit requirements or other material obligations, prohibitions, or restrictions of whatever kinds shall be imposed by the director upon the insurers ... of the other state or country doing business or seeking to do business in this state.

And AS 21.09.270(b) contains exceptions:

> This section does not apply to personal income taxes, to ad valorem taxes on real or personal property, or to special purpose obligations or assessments imposed by another state in connection with particular kinds of insurance other than property insurance.

The Director drew a distinction between taxes, licenses, and fees under AS 21.09.270(a), which were calculated in the aggregate, and "other obligations," which were compared only on an item-by-item basis.

As a matter of law, the Director interpreted AS 21.09.270(a) as requiring "a comparison of an aggregate calculation of taxes, licenses, and fees" between Alaska and foreign insurers. The Director also determined that the Division's retaliatory tax schedules direct taxpayers to use this aggregate calculation under AS 21.09.270(a). The Director further concluded as a matter of law that ACHIA and SEHRA charges are not a tax, license, or fee and therefore should not be included in the aggregate calculation of taxes, licenses, and fees under AS 21.09.270(a). The Director also noted that "[t]o the extent that the ACHIA and SEHRA assessments are 'other material obligations' under the statute, they are compared separately with like items imposed by a foreign insurer's domiciliary state. The assessment of the Washington Insurance Pool is a similar assessment or obligation to ACHIA."

The Director decided that, to the extent ACHIA, SEHRA, and WHIP were "special purpose obligations or assessments," the exception in AS 21.09.270(b) operated only to exclude the Washington charge from any comparison with similar charges imposed in Alaska and the exception did not result in any further retaliation under AS 21.09.270 for those kinds of charges. Finally, the Director concluded that the exception in AS 21.09.270(b) did not apply to reduce Blue Cross's retaliation fee because none of the aggregated taxes, licenses, and fees listed on their Retaliatory Schedule included "special purpose obligations" imposed by another state.

Following the Director's denial of Blue Cross's refund request, Blue Cross appealed the determination to the superior court. Blue Cross also filed a separate complaint seeking a declaratory judgment that Blue Cross was not subject to the retaliatory tax imposed by AS 21.09.270; that even if it were, it did not owe any such tax for the 1998 tax year because the statutory payments it was required to make under ACHIA and SEHRA should have been included on the Alaska side of the retaliatory tax calculation, thereby reducing or eliminating any retaliatory tax it owed; and that the retaliatory tax imposed by AS 21.09.270 was unconstitution-

---

**10.** The Division of Insurance, as a party to this proceeding, will be referred to as the "Division." When referring to the tax refund proceedings before the Director of the Division of Insurance below, the terms "Director of the Division" or the "Director" will be used.

al under the equal protection, substantive due process, and special privileges and immunities provisions of the Alaska Constitution. Blue Cross also sought injunctive relief prohibiting the collection of retaliatory tax against it.

The Division answered and filed a counter-claim seeking $925,592 it claimed Blue Cross owed because it included the ACHIA and SEHRA charges on the Alaska side of its 1998 retaliatory schedule as a tax, license, and fee, thereby reducing its premium tax and retaliatory tax obligation. The Division further sought a judgment that AS 21.09.270 applies to Blue Cross and that payments made to ACHIA and SEHRA are not included in the aggregate calculation of taxes, licenses, and fees under AS 21.09.270.

The superior court considered summary judgment motions from both parties and affirmed the decision of the Division and denied Blue Cross summary judgment on its equal protection and substantive due process claims. Blue Cross appeals. Below we consider: (1) whether Blue Cross waived its right to a refund when it failed to make its 1995 and 1996 retaliatory tax payments under protest; (2) whether as a hospital and medical services corporation Blue Cross is subject to retaliatory taxes; (3) whether the Division properly excluded the payments Blue Cross made to ACHIA and SEHRA under the retaliatory tax statute; and (4) whether the retaliatory statute as applied to Blue Cross violates Alaska's equal protection and substantive due process clauses.

## III. DISCUSSION

### A. Standard of Review

When the superior court acts as an intermediate court of appeal in administrative cases, we review the administrative agency's decision directly.[11] In questions of law involving an agency's expertise or where an agency has made a fundamental policy decision, a rational basis standard is applied and we defer to an agency's determination so long as it is reasonable.[12] For questions of law that do not involve agency expertise, we substitute our own judgment, adopting "the rule of law that is most persuasive in light of precedent, reason, and policy."[13]

When interpreting a statute, courts look to the plain meaning of the statute, the legislative purpose, and the intent of the statute.[14] "Statutes should be construed, wherever possible, so as to conform to the constitutions of the United States and Alaska."[15] The constitutionality of a statute and matters of constitutional or statutory interpretation are questions of law to which we apply our independent judgment, adopting the rule of law that is most persuasive in light of precedent, reason, and policy.[16]

A grant of summary judgment is reviewed de novo, and we will affirm if the record contains no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.[17]

### B. The Division Waived Its Right To Argue that Blue Cross's Claim Is Barred Because of Failure To Protest Its Retaliatory Fees in 1995 and 1996.

Blue Cross has stipulated that it paid its 1995 and 1996 taxes without formal protest. In the same stipulation, the parties also agreed that Blue Cross's "request for a refund of retaliatory taxes paid for the 1995 and 1996 tax years was timely and [was] in all other respects properly before the Director of the Division ... for a decision on its merits." The Division claims, though, that Blue Cross is not entitled to a refund of

11. *Alaska Trademark Shellfish, LLC v. State*, 91 P.3d 953, 956 (Alaska 2004).

12. *Alyeska Pipeline Serv. Co. v. DeShong*, 77 P.3d 1227, 1231 (Alaska 2003).

13. *Id.*

14. *W. Star Trucks v. Big Iron Equip.*, 101 P.3d 1047, 1050 (Alaska 2004).

15. *Alaska Transp. Comm'n v. AIRPAC, Inc.*, 685 P.2d 1248, 1253 (Alaska 1984) (citing *McCracken v. State*, 518 P.2d 85, 88 (Alaska 1974)).

16. *State Commercial Fisheries Entry Comm'n v. Carlson*, 65 P.3d 851, 858 (Alaska 2003).

17. *Briggs v. Newton*, 984 P.2d 1113, 1117 (Alaska 1999).

retaliatory fees because of its failure to file a formal protest when it paid its 1995 and 1996 retaliatory taxes. The Division requests that we affirm the Director's order on this basis alone.

As an initial matter, we dispense with the parties' dispute over whether a formal protest was a prerequisite to obtaining a refund. In *Principal Mutual Life Insurance Co. v. State,* we ruled that even if there is no statutory requirement that a formal protest be made prior to the recovery of a tax refund, a taxpayer must formally protest a tax in order to maintain a common law action in assumpsit for a tax refund.[18] In *Carlson v. State,* we reiterated *Principal's* holding, noting that "we clearly held [in *Principal*] that both under the statute and common law, the taxpayer must formally protest the payment of the tax at the time of payment in order to subsequently maintain either a common law or statutory cause of action." [19]

But AS 21.09.210(k) allows for a refund even if a payment was not made under protest when a mistake or misinterpretation has been made. It provides:

> If, within three years after the date the tax under this section was due, an insurer discovers a mistake or misinterpretation that resulted in an overpayment of the tax in an amount exceeding $250 in any one calendar year, the insurer may make a written request to the director for a refund. If the director determines a valid mistake or misinterpretation has occurred, the director shall refund to the insurer the amount of the excess tax by granting, at the director's discretion, a monetary refund or premium tax credit.[20]

Blue Cross claims its failure to include the charges was a "mistake or misinterpretation" within the meaning of AS 21.09.210(k), while the Division claims that Blue Cross is challenging the validity of the Division's interpretation and application of the retaliatory tax statute, and therefore a protest was required. Blue Cross notes that it invoked AS

21.09.210(k) when it requested its refund. Although Blue Cross concedes that AS 21.09.210(k) applies only to premium taxes, it argues that the parties agreed through the stipulation that the Division could also provide refunds for the similar retaliatory taxes, and like under AS 21.09.210(k), no protest would be required. But we need not resolve the question whether Blue Cross's refund request more properly falls within AS 21.09.210(k) and requires no protest, or would require a payment with protest as a challenge to the Division's interpretation and application of the retaliatory tax statute. Even if payment under protest were required, the Division waived its right to raise the issue.

Under *Principal,* we indicated that waiver of the payment under protest requirement is possible. At issue in *Principal* was whether Principal was entitled to a refund, and we remanded to the superior court the question whether through its interaction with Principal the Division waived the payment under protest requirement.[21] Citing *Principal,* we noted in *Carlson* that "[t]he protest requirement may be waived by the taxing authority." [22]

Blue Cross argues that, even if the payment under protest requirement would otherwise bar its claim, the express agreement under the stipulation that the refund request was "timely and in all other respects properly before the Director ... for a decision on the merits" constituted a waiver of the requirement by the Division. It adds that the Director actually made a decision respecting the refund request on its merits, and this is further evidence of waiver.

The Division counters that the stipulation did not result in waiver, and that the "matter before the Director for decision was Blue Cross's entitlement to a refund." It refers to paragraph 22 of the stipulation, which states in relevant part that the "parties stipulate that the Director has the authority to decide

**18.**  780 P.2d 1023, 1030 (Alaska 1989).

**19.**  798 P.2d 1269, 1280 (Alaska 1990) (quotation marks omitted).

**20.**  AS 21.09.210(k).

**21.**  780 P.2d at 1029.

**22.**  798 P.2d at 1280.

whether and to what extent, Taxpayer is entitled to its requested refund of retaliatory taxes paid for the 1995 and 1996 tax years." Emphasizing the language "whether, and to what extent," it argues that there was no attempt in the stipulation to foreclose any legal arguments, including its formal protest argument. Addressing a later sentence in paragraph 22, which states that Blue Cross "further waives any right it may have to request a refund of those taxes under AS 43.10.210," the Division argues that at most the paragraphs can be read to reflect an intent to proceed under the insurance code and not under AS 43.10.210, which addresses revenue and taxation.

But considering the plain language of the stipulation, which states that the refund request "was timely and [was] in all other respects properly before the Director of the Division ... for a decision on its merits," and the Division's subsequent engagement of Blue Cross's refund request on its merits, we reject the Division's strained interpretation of the stipulation's language and conclude that the Division waived its right to argue that Blue Cross is not entitled to a refund because it did not make a formal protest when it paid its 1995 and 1996 retaliatory taxes.

## C. Blue Cross Is Subject to Retaliatory Taxes Under AS 21.09.270.

█ Blue Cross argues that because it is a hospital and medical services corporation, it should not even be subject to retaliatory taxes. Under AS 21.87.260, "[e]very hospital and medical service corporation doing business under this chapter shall be taxed as provided in AS 21.09.210," which addresses premium taxes and not retaliatory taxes. Blue Cross argues that because no reference is made in AS 21.87.260 to retaliatory taxes under AS 21.09.270, "AS 21.87.260 should be understood to state the clear legislative intention that Blue Cross, as an HMSC [hospital and medical service corporation], is subject only to premium taxes under AS 21.09.210 and *not* also to retaliatory taxes under AS 21.09.270."

Blue Cross also relies on AS 21.87.030, which provides that "this title [Title 21–Insurance] does not apply to a health care service corporation unless contained or referred to in this chapter." It also cites, among other similar opinions, a 1979 opinion of the Attorney General which states that "AS 21.87 is the exclusive frame of reference for addressing any problems relating to the regulation of health care service corporations in the state." [23]

In response, the Division contends that AS 21.87.260 was only intended to clarify that HMSCs are not exempt from taxation despite being non-profits, as in some other states they are exempt. Therefore, the Division argues, AS 21.87.260 was not intended as a limit on the Division's authority. The Division further argues that failure to reference a retaliatory statute, different in nature than a tax statute, is unexceptional and no inference can be drawn that the legislature intended to exclude it.

The Division also counters that AS 21.87.340 renders the HMSCs subject to retaliatory taxes. Alaska Statute 21.87.340 provides in relevant part:

> In addition to the provisions contained or referred to previously in this chapter, the following chapters and provisions of this title also apply with respect to service corporations to the extent applicable and not in conflict with the express provisions of this chapter and the reasonable implications of the express provisions, and, for the purposes of the application, the corporations shall be considered to be mutual "insurers": ... (4) AS 21.09, except AS 21.09.090.

The Division then notes that had the legislature intended HMSCs to be exempted from retaliatory taxes, it could have expressly excluded them under AS 21.87.270, as it did with AS 21.09.090. We are persuaded by the Division's argument. Had the legislature intended to exclude HMSCs from paying retaliatory taxes, it could have simply included AS 21.09.270 along with AS 21.09.090 as an exception.

**23.** 1979 Informal Op. Att'y Gen. No. J–66–361– 79, 1979 WL 22800, at *1 (Apr. 17, 1979).

We are also persuaded by the superior court's conclusion:

> The retaliatory tax statute, AS 21.87.270, and the provision governing the taxation of HMSCs, AS 21.87.260, are not in conflict because they serve different purposes. The purpose of AS 21.87.260 is to impose a standard tax that raises revenue for the State. To the contrary, the purpose of section .270 is not to raise revenues, but to create a fair playing field among insurers from different domiciles.

Therefore, under AS 21.87.340, which provides that chapter 21, including the retaliatory tax statute AS 21.09.270, applies "to the extent applicable and not in conflict with the express provisions of this chapter and the reasonable implications of the express provisions," retaliatory taxes should apply to Blue Cross.

The 1979 opinion of the Attorney General cited by Blue Cross for the proposition that "AS 21.87 is the exclusive frame of reference for addressing any problems relating to the regulation of health care service corporations in the state"[24] lends further support to a finding that AS 21.87.260 was not intended to exclude retaliatory taxes. The Attorney General addressed an inquiry from Blue Cross about whether, as a foreign HMSC, Blue Cross was required to comply with certain deposit and investment provisions of AS 21.87. The Attorney General noted:

> [O]n its face AS 21.87 allows for the creation and recognition of only domestic health care service corporations. There is no provision in AS 21.87 which would be analogous to AS 10.05.597 et seq pertaining to foreign business corporations which would provide for the issuance of certificates of authority to foreign health care service corporations. Thus, it is clear that the legislature intended to prohibit the operation of foreign health service corporations in the state with one exception. AS

21.87.350 states: "A health care service contractor registered to do business in this state on July 1, 1966 is entitled to be registered under this chapter, whether or not it meets the requirements of this chapter." This provision was specifically added to grandfather in foreign service corporations operating in the state at the time. [Blue Cross] was the only such corporation and thus the grandfather clause was designed for the exclusive benefit of that corporation.[25]

The Attorney General also noted that "[i]t is our view that, although the question is not without some ambiguity, AS 21.87 does apply to foreign hospital and medical service corporations to the extent that its requirements do not conflict with the inherent characteristics of Blue Cross as a foreign corporation."[26] Since AS 21.87 was intended to apply only to domestic HMSCs with the sole exception of Blue Cross, and retaliatory taxes would only be applicable because of "the inherent characteristics of Blue Cross as a foreign corporation," the inference can be drawn that retaliatory taxes were not even contemplated by the legislature when it enacted AS 21.87. Therefore, Blue Cross's argument that "AS 21.87.260 should be understood to state the clear legislative intention that Blue Cross, as an HMSC, is subject only to premium taxes under AS 21.09.210 and *not* also to retaliatory taxes under AS 21.09.270" is unpersuasive.

### D. The Division Properly Excluded Blue Cross's Payments to ACHIA and SEHRA from Its Assessment under the Retaliatory Tax Statute.

▇▇▇▇ Having determined that Blue Cross is indeed subject to the retaliatory tax statute, we turn now to Blue Cross's arguments that the Division's specific interpretation of that statute is improper. The calculation of a retaliatory tax involves agency discretion,[27] and although we apply our independent judgment to matters of statutory in-

---

24. *Id.* at *1.

25. *Id.* at *1–2.

26. *Id.*

27. *See Metro. Life Ins. Co. v. Ins. Comm'r, Md.,* 58 Md.App. 457, 473 A.2d 933, 942 (1984) (up-

holding retaliatory tax statute against non-delegation clause challenge and noting that the "complex and varying fact patterns that justify administrative flexibility in implementing regulatory statutes are also a problem in the enforcement of tax laws").

terpretation, we will defer to a reasonable agency determination that implicates agency expertise.[28] We will also apply a more deferential standard of review where an agency action is longstanding and continuous.[29] Here, the Division has presented its longstanding interpretation, albeit implicitly, in the schedules, forms, and instructions it has made available to taxpayers since 1986.

Blue Cross advances more than one theory challenging the Division's application of AS 21.09.270. First, the company disputes the Director's reading of subsection .270(a) to provide for an item-by-item comparison of "fines, penalties, deposit requirements, or other material obligations" even when Alaska law imposes an obligation that lacks a counterpart in a company's state of domicile. According to Blue Cross, this subsection must be read instead always to require that all of the enumerated financial burdens in subsection .270(a) factor into the Division's calculation. In other words, Blue Cross argues that charges under ACHIA and SEHRA, as well as all other "fines, penalties, deposit requirements, [and] other obligations," should go into a single sum that represents the cost of operating under Alaska law.

Alternatively, Blue Cross questions whether the ACHIA and SEHRA charges qualify as "other material obligations" under AS 21.09.270(a). Blue Cross argues that such payments are properly classified as taxes, licenses, or fees and therefore should be treated "in the aggregate" under the statute. Irrespective of the route taken, however, Blue Cross argues that we must invalidate the Division's application of the statute because comparing charges like ACHIA and SEHRA separately with like items imposed by an out-of-state insurer's domiciliary state "is illogical, produces irrational results, and has no support in the case law."

Blue Cross further takes issue with the Director's interpretation of subsection .270(b). That section carves out an exception for "special purpose obligations or assess-

ments imposed by another state." In its ruling, the Division found as a matter of law that "to the extent that the assessments of ACHIA, SEHRA, and the Washington Health Insurance Pool are 'special purpose obligations or assessments,' the exception in AS 21.09.270(b) operates only to exclude the Washington assessment from any comparison with similar assessments imposed in Alaska to determine if retaliation is required." Blue Cross contends that the plain language of subsection .270(b) requires that the Division exclude only foreign state "special purpose obligations." Alaska's own "special purpose obligations," according to Blue Cross, fit within the category of "other obligations" or even of "taxes, licenses, and fees" enumerated in subsection .270(a). Taken together, Blue Cross's arguments amount to a claim that ACHIA and SEHRA charges should be considered in the aggregate on the "Alaska side" of the retaliatory tax calculation, while Washington's WHIP charges should be excluded from the "Washington side."

██ In evaluating this argument we turn first to the statutory text. It states that tax will be imposed to the extent that the "taxes, licenses, and fees, *in the aggregate* ... imposed upon Alaska insurers [out-of-state]" exceed the "taxes, licenses, and fees, *in the aggregate* ... under the statutes of this state." [30] The statute also states that tax will be imposed to the extent that the "fines, penalties, deposit requirements, or other material obligations ... imposed upon Alaska insurers [out-of-state]" exceed the "fines, penalties, deposit requirements, or other obligations ... under the statutes of this state." Nowhere does the phrase "in the aggregate" modify "other obligations," although it appears three times after "taxes, licenses, and fees" within the text of subsection .270(a). This language reasonably permits the Director's conclusion that "other obligations" under Alaska law only offset similar foreign state obligations and should not be considered "in the aggregate." At the same time, the language undermines Blue Cross's argu-

**28.** *Alyeska Pipeline Serv. Co. v. DeShong*, 77 P.3d 1227, 1231 (Alaska 2003).

**29.** *Bullock v. State, Dep't of Cmty. & Reg'l Affairs*, 19 P.3d 1209, 1210 (Alaska 2001).

**30.** AS 21.09.270(a).

ment insofar as the company's reading renders that phrase superfluous.

Blue Cross contends that "the fact that those categories of impositions are required to be considered 'in the aggregate' does not lead to the conclusion that other expressly included items, such as 'other obligations' ... can simply be excluded from a retaliatory tax calculation if the foreign state imposes no similar obligation." The plain language of the statute, however, supports that conclusion. The statute only imposes a tax on "other obligations" under a foreign state's law "that are in *excess* of the fines, penalties, deposit requirements, or other obligations ... under the statutes of this state." [31] Just as the statute provides no subsidy to insurers from states that have lower aggregate "taxes, licenses, and other fees," so too does it deny an offset to insurers from states with lower "fines, penalties, deposit requirements, and other obligations."

Nor does the statute provide support for Blue Cross's argument that ACHIA and SEHRA charges "should be considered tantamount to taxes, licenses, or fees." While most taxes, licenses, and fees are imposed by, payable to, or collected by the State, the ACHIA and SEHRA charges are levied by specially created non-profit institutions. Moreover, if the Division excluded WHIP and similar charges under subsection .270(b), while taking the Alaskan counterparts of these charges to offset foreign state "taxes, licenses, and fees," retaliation would hardly ever occur. Indeed, little "excess" would ever arise with ACHIA, SEHRA, and several other "special purpose obligations" [32] driving up the "Alaska side" of the tax equation while subsection .270(b) exempts their out-of-

state counterparts on the other side of the ledger. Adopting Blue Cross's interpretation hence "would yield the absurd result of rendering AS 21.90.270 a nullity." We generally disfavor statutory constructions that reach absurd results. Therefore, we look for another construction that avoids the absurdity and is consistent with a reasonable interpretation of the terms of the statute.

The Director's interpretation satisfies those criteria. In contrast to Blue Cross's reading, the Director gives effect to all of the language in the statute. And contrary to the "irrational results" that Blue Cross predicts, the Director's interpretation follows an intuitive logic. Retaliatory tax statutes aim to universalize the tax and regulatory treatment of firms across state lines.[33] Applying a retaliatory tax on the basis of another state's unconventional tributary policies involves "practical difficulties." [34] In light of these difficulties, the statutory language plausibly reflects an intent to steer foreign states away from "fines, penalties, deposit requirements, or other obligations," and towards "taxes, licenses, and other fees," because the former "obligations" pose the specter of hidden taxes and administrative hassle, while the latter charges more easily lend themselves to comparison in the aggregate.

Case law from outside of Alaska offers some support for Blue Cross's reading of the statute, but we do not find these decisions persuasive. In *Executive Life Insurance Co. v. Commissioner of Revenue*, the Minnesota tax court found that assessments similar to ACHIA and SEHRA qualified as "licenses" or "fees," and therefore should be aggregated with other licenses and fees when calculating the Minnesota side of retaliatory taxes.[35]

---

**31.** *Id.*

**32.** *See* AS 21.80.060 (assessments imposed on insurers by the Alaska Insurance Guaranty Association for property and casualty insurers); AS 21.79.070 (assessments imposed on insurers by the Alaska Life and Health Insurance Guaranty Association); AS 23.30.040 (Second Injury Fund assessment).

**33.** *See Western & Southern Life Ins. Co. v. State Bd. of Equalization of California*, 451 U.S. 648, 668, 101 S.Ct. 2070, 68 L.Ed.2d 514 (1981) (noting that "some states consider only items of tax

on premium income and fees paid and disregard other burdens because of practical difficulties involved in computing and comparing exactions").

**34.** *State Farm Mut. Auto. Ins. Co. v. Long*, 129 N.C.App. 164, 497 S.E.2d 451, 455 (1998); *see also Metro. Life Ins. Co.*, 58 Md.App. at 462–63, 473 A.2d 933 (enumerating the difficulties of retaliating against local taxes imposed in a foreign state).

**35.** No. 5460, 1991 WL 149137 (Minn.Tax.Ct. 1991).

But the Minnesota statute contained language that materially differed from subsection .270's terms.[36] Other courts that have interpreted more similar statutory language have either failed to address the policy implications of adopting Blue Cross's interpretation,[37] or relied on legislative history and other factors that lack a parallel in this case.[38]

In sum, Blue Cross has not convinced us that the Division's application of the law departs from this basic statutory scheme laid out in AS 21.09.270. Nor do we believe that the Division otherwise abused its discretion in implementing the statute. We therefore affirm the judgment of the superior court.

## E. The Retaliatory Tax Statute Does Not Violate Blue Cross's Equal Protection or Due Process Rights.

### 1. Equal protection applies.

▇▇▇ Article I, section 1 of the Alaska Constitution provides that "all persons are ... entitled to equal rights, opportunities, and protection under the law." The equal protection clause applies to protect those similarly situated from disparate treatment.[39] The Division makes the argument that AS 21.09.270 does not create a discriminatory classification, and therefore Alaska's equal protection clause is inapplicable. But AS 21.09.270 clearly draws a distinction between insurers doing business in Alaska, imposing retaliatory taxes only on foreign insurers. The statute additionally imposes retaliatory taxes on similarly situated foreign insurers doing business in Alaska based on the tax policies of their domicile states or countries. Because AS 21.09.270 treats foreign insurers differently than similarly situated Alaskan insurers, and further differentiates among foreign insurers based on the policies of their domicile state or country, the equal protection clause applies.

### 2. The retaliatory tax statute implicates economic interests and should therefore be subjected to minimal scrutiny.

▇▇▇ When reviewing the constitutionality of a statute under the equal protection clause, we use a sliding scale analysis, set forth as follows:

First, it must be determined at the outset what weight should be afforded the constitutional interest impaired by the challenged enactment. The nature of this interest is the most important variable in fixing the appropriate level of review.... Depending upon the primacy of the interest involved, the state will have a greater or lesser burden in justifying its legislation.

Second, an examination must be undertaken of the purposes served by a challenged statute. Depending on the level of review determined, the state may be required to show only that its objectives were legitimate, at the low end of the continuum, or, at the high end of the scale, that the legislation was motivated by a compelling state interest.

Third, an evaluation of the state's interest in the particular means employed to further its goals must be undertaken. Once again, the state's burden will differ in accordance with the determination of the level of scrutiny under the first stage of analysis. At the low end of the sliding scale, we have held that a substantial relationship between means and ends is constitutionally adequate. At the higher end of the scale, the fit between means and ends must be much closer. If the purpose can be accomplished by a less restrictive alternative, the classification will be invalidated.[40]

▇▇▇ The parties dispute the nature of the interest impaired by the retaliatory tax statute. The Division argues that AS 21.09.270

**36.** *See id.* at *7.

**37.** *See Fla. Dep't of Revenue v. Liberty Nat'l Ins. Co.*, 667 So.2d 445 (Fla.Dist.App.1996).

**38.** *See Aetna Life Ins. Co. v. Dir., Div. of Taxation*, 20 N.J.Tax 87, 2002 WL 714477 (2002).

**39.** *See, e.g., Fairbanks N. Star Borough Assessor's Office v. Golden Heart Utils., Inc.*, 13 P.3d 263 (Alaska 2000).

**40.** *Alaska Pac. Assur. Co. v. Brown*, 687 P.2d 264, 269–70 (Alaska 1984).

affects purely an economic interest, and therefore only the lowest level of scrutiny applies.[41] Blue Cross, on the other hand, asks that a higher level of scrutiny be applied because the retaliatory tax statute makes classifications based on residency. We agree with the United States Supreme Court that retaliatory statutes such as AS 21.09.270 are not "imposed on foreign corporations *qua* foreign corporations."[42] They are only imposed on foreign insurers whose home states would impose burdens on insurers from the retaliating state greater than the retaliating state would otherwise impose on that state's insurers. We are therefore persuaded that AS 21.09.270 does not discriminate against foreign insurers based solely on their domicile. Alaska Statute 21.09.270 thus implicates only an economic interest, the right to be free from disparate taxation. We have held that "freedom from disparate taxation[ ] lies at the low end of the continuum of interests protected by the equal protection clause."[43] When assessing AS 21.09.270, we therefore apply minimum scrutiny and ask whether the state's ends are legitimate and whether they bear a fair and substantial relationship to the purposes of the statute.[44]

### 3. The retaliatory tax statute bears a fair and substantial relationship to its purpose.

Washington taxes non-profit health care services contractors on two percent of all premiums and prepayments for health care services, similar to the manner in which it taxes for-profit health care service contractors.[45] This tax rate applies equally to foreign and domestic health care service contractors,[46] and would therefore apply if an Alaskan health care services contractor were to offer health care services in Washington. HMSCs in Alaska are taxed at a rate of six percent of their gross premiums less claims paid, a more favorable rate when compared to both Washington health care services contractors and all domestic and foreign insurers in Alaska except for HMSCs, which are taxed at a rate of 2.7 percent.[47] Since retaliatory statutes "substitute the general tax laws of the foreign insurer's home state for the general tax laws of the state applying the retaliatory statute whenever the general tax laws of the foreign insurer's home state are more burdensome than the general tax laws of the state applying the retaliatory statute,"[48] Alaska's retaliatory tax statute has been applied to Blue Cross.

Blue Cross claims that the Division's application of AS 21.09.270 violates equal protection when applied to Blue Cross: (1) because it is illegitimate to "retaliat[e] against Blue Cross and the State of Washington for the Washington Legislature's policy decision to impose a non-discriminatory tax on health service contractors ... similar to the premium taxes imposed on for-profit insurers"; and (2) because even if the purpose of AS 21.09.270 were legitimate, the imposition of retaliatory taxes on Blue Cross does not fairly and substantially advance that purpose. We address each argument in turn.

Blue Cross argues that Alaska has no legitimate interest in "attempting to coerce changes in Washington's non-discriminatory HMSC tax policies, which would tax a hypothetical Alaskan HMSC doing business there in precisely the same manner, at the same rate, as Blue Cross is taxed." But the coercive nature of retaliatory taxation that Blue Cross deems illegitimate is precisely that sanctioned by the United States Supreme Court in *Western & Southern Life Insurance Co. v. State Board of Equalization of Califor-*

---

**41.** *Eldridge v. State, Dep't of Revenue*, 988 P.2d 101, 103 (Alaska 1999).

**42.** *Western & Southern Life Ins. Co.*, 451 U.S. at 670 n. 23, 101 S.Ct. 2070.

**43.** *Atlantic Richfield Co. v. State*, 705 P.2d 418, 437 (Alaska 1985).

**44.** *Ranney v. Whitewater Eng'g*, 122 P.3d 214, 223 (Alaska 2005).

**45.** WASH. REV.CODE § 48.14.0201(2).

**46.** *Id.*

**47.** AS 21.09.210(b).

**48.** Russ, *Construction, Application and Operation of State "Retaliatory" Statutes*, 30 A.L.R.4th 873 § 1(a).

*nia.*[49] In *Western & Southern,* the United States Supreme Court upheld California's retaliatory tax as constitutional under the federal Equal Protection Clause.[50] In upholding the statute, the Supreme Court reasoned that promotion of domestic industry by deterring barriers to interstate business is a legitimate state purpose and the mere fact that California was trying to promote its insurance industry by influencing the policies of other states through retaliatory taxation did not render the purpose illegitimate.[51] It further concluded that it was reasonable for California to suppose that its retaliatory taxes would induce other states to lower the burdens on California insurers in order to spare their domestic insurers the cost of the retaliatory tax in California.[52]

Here, Blue Cross acknowledges that in Alaska we "tax non-profit HMSCs in a different manner and at a lower effective tax rate than for-profit insurers." Washington, however, chooses to tax its non-profit health care services corporations at a relatively higher rate, similar to its for-profit insurers.[53] Applying the retaliatory tax statute to a Washington non-profit when Washington would impose higher taxes if an Alaskan non-profit health care services corporation were to conduct business in Washington is thus fully consonant with the well-established and constitutionally permissible purpose of retaliatory tax statutes, even if the intent of Alaska is to coerce Washington into lowering its taxes on non-profit health care services corporations.

While the record with respect to the presence of Alaskan insurers in Washington or other foreign jurisdictions is sparse, according to *Couch on Insurance 3d,* "[i]t is generally held that the fact that there is no local company doing business in the foreign state does not prevent the operation of the retaliatory statute."[54] That the retaliatory statute serves to protect both established insurers conducting business across state lines and those desirous of entering foreign jurisdictions is underscored by the legislative history of AS 21.09.270, which states that the statute was enacted "for the protection of Alaska insurers transacting or desiring to transact business in other states." We therefore reject Blue Cross's claim that AS 21.09.270 was applied to Blue Cross for the illegitimate purpose of influencing Washington's tax policy.

We next assess whether AS 21.09.270 bears a fair and substantial relationship to its legitimate purpose. The retaliatory tax statute was adopted in Alaska in connection with a comprehensive revision of Alaska's insurance laws. Its stated purpose was "to protect the domestic insurance company insofar as getting equal treatment when it entered foreign jurisdictions."[55] Blue Cross argues that because an Alaskan company would get equal treatment in Washington when compared to Washington health care services corporations, the retaliatory tax statute does not advance the purpose of AS 21.09.270 of equalizing the treatment of hypothetical Alaskan companies when they enter the jurisdiction. But Blue Cross's narrow reading of the purpose clause suggests that retaliatory statutes are only intended to equalize the treatment of insurers within, and not across, jurisdictions. Historically, their purpose has not been so limited. As the United States Supreme Court has noted, the "principal purpose of retaliatory tax laws is to promote the interstate business of domestic insurers by deterring other States from enacting discriminatory or *excessive taxes.*"[56] We therefore agree with the Division and the superior court that the purpose clause of AS 21.09.270 should be read in harmony with typical retaliatory statutes as intending to equalize and lower taxes on domestic insurers across

---

49. 451 U.S. at 674, 101 S.Ct. 2070.

50. *Id.*

51. *Id.* at 669–74, 101 S.Ct. 2070.

52. *Id.* at 672, 101 S.Ct. 2070.

53. Wash Rev.Code § 48.14.0201(2).

54. 1 Lee R. Russ & Thomas F. Segalla, Couch on Insurance 3D § 3.38, at 3–58 (1995).

55. 1966 House Journal Supp. 12, at 26 (Mar. 3, 1966).

56. *Western & Southern Life Ins. Co.,* 451 U.S. at 668, 101 S.Ct. 2070 (emphasis added).

states and not just within states, and assess the means-to-end fit with this broader purpose in mind.

■ The United States Supreme Court upheld California's retaliatory tax statute in *Western & Southern* under the federal Equal Protection Clause, applying the relatively deferential federal rational basis test, which requires only that legislation bear a rational relation to a legitimate state purpose.[57] In the wake of *Western & Southern*, state courts have upheld retaliatory statutes in the face of equal protection challenges under similarly deferential rational basis review. For example, the Supreme Court of Florida upheld Florida's retaliatory tax, which was "similar in structure to the retaliatory tax that was upheld against similar challenges in *Western & Southern Life*."[58] The Supreme Court of Florida noted:

> *Western & Southern Life* also made clear that retaliatory taxes, which have been a common feature of insurance taxation for over a century, are rationally related to the states' legitimate interest in promoting the interstate business of domestic insurers by deterring other States from enacting discriminatory or excessive taxes. Because it is at least fairly debatable that the Florida legislature enacted section 624.429 with this well recognized purpose in mind, the Equal Protection challenge ... was properly rejected.[59]

And according to *Couch on Insurance 3d*, "[b]y the weight of authority, a state has the power to protect its own domestic insurance companies doing business in other states by imposing regulatory requirements of equal stringency upon the insurance companies of those states."[60] Blue Cross urges that this court depart from this authority because a higher level of scrutiny applies under the Alaska Constitution. And Blue Cross is correct that under Alaska's equal protection clause, we do subject legislation to a more exacting inquiry than under the federal rational basis test,[61] requiring that classifications "be reasonable, not arbitrary, and ... rest upon some ground of difference having a fair and substantial relation to the object of the legislation."[62] We are persuaded, though, that even under our more demanding test, AS 21.09.270 passes constitutional muster. Since AS 21.09.270 was applied to Blue Cross only because Washington would apply more onerous taxes on a hypothetical Alaskan non-profit health care services corporation operating in Washington, we find that the purpose of AS 21.09.270 of equalizing and lowering taxes across states is fairly and substantially furthered by imposition of the retaliatory tax on Blue Cross.

### 4. Blue Cross's substantive due process challenge also fails.

■ "Substantive due process is denied when a legislative enactment has no reasonable relationship to a legitimate governmental purpose."[63] Blue Cross's substantive due process argument also fails because we have

---

**57.** *Id.*

**58.** *Gallagher v. Motors Ins. Corp.*, 605 So.2d 62, 70 (Fla.1992).

**59.** *Id.* at 71 (quotation marks omitted); *see also Mut. Life Ins. Co. of N.Y. v. Washburn*, 137 Ill.2d 312, 148 Ill.Dec. 723, 561 N.E.2d 29, 37–38 (1990) (relying on *Western & Southern* and noting that its retaliatory tax statute was "rationally related to deterring other States from enacting discriminatory or excessive taxes"); *Prudential Ins. Co. of Am. v. Comm'r of Revenue*, 429 Mass. 560, 709 N.E.2d 1096, 1103 (1999); *TIG Ins. Co., Inc. v. Dep't of Treasury*, 464 Mich. 548, 629 N.W.2d 402, 407 (2001) (noting that Michigan's equal protection clause was coextensive with the federal equal protection clause, and commenting, "[i]n light of *Western & Southern*, the general constitutionality of Michigan's retaliatory tax is clear").

**60.** 1 RUSS & SEGALLA, COUCH ON INSURANCE 3D § 3:35, at 3–52.

**61.** *See, e.g., Herrick's Aero–Auto–Aqua Repair Ser. v. State, Dep't of Transp. & Pub. Facilities*, 754 P.2d 1111, 1114 (Alaska 1988) ("[T]he minimum burden that the state must meet when defending legislation challenged on equal protection grounds under the Alaska constitution is greater than that required under the United States Constitution.").

**62.** *State v. Planned Parenthood of Alaska*, 35 P.3d 30, 44 (Alaska 2001) (citations omitted).

**63.** *Concerned Citizens of S. Kenai Peninsula v. Kenai Peninsula Borough*, 527 P.2d 447, 452 (Alaska 1974).

held that AS 21.09.270 meets our higher equal protection standard, bearing a fair and substantial relationship to its legitimate purpose.

## IV. CONCLUSION

The Division waived its right to argue that Blue Cross is precluded from seeking a refund of its retaliatory taxes. We therefore consider Blue Cross's claim and conclude that Blue Cross is subject to retaliatory taxes. We also conclude that the Division acted reasonably in implementing the retaliatory tax statute, and specifically, in excluding payments that Blue Cross made to the Alaska Comprehensive Health Insurance Association and the Alaska Small Employers Health Reinsurance Association. The retaliatory tax statute's plain language, the policies underlying that statute, and deference to agency expertise and its established interpretation of the statute, all support this outcome. Accordingly, we AFFIRM the ruling made by the Director of the Division of Insurance. Finally, because we conclude that the retaliatory statute bears a fair and substantial relationship to its legitimate purpose, we also AFFIRM the superior court's determination that AS 21.09.270 is constitutional under Alaska's equal protection and substantive due process clauses.

EASTAUGH, Justice, not participating.