Edgar J. Nathan, Jr., J.
This is a proceeding under article 78 of the Civil Practice Act to review a determination of respondent Superintendent of Insurance denying petitioners’ claims for refunds of overpayments of direct premium taxes for the calendar years 1953 through 1957.
For each of the years in question, petitioners, which are foreign or alien insurers licensed to do business in New York, paid to the respondent a 2% tax on certain “ gross direct premiums, less return premiums thereon, written on property or risks located or resident in this state ’ ’, in accordance with section 552 of the Insurance Law. They were entitled to deduct from gross premiums, pursuant to paragraph (c) of subdivision 6 thereof, the amounts of such direct premiums for any insurance against loss or damage by fire “ on which a tax has been paid ” as provided for in the Charter of the City of New York. A 2% tax on premiums covering risks of fire on property located within the City of New York was payable by petitioners to the Fire Commissioner under the provisions of chapter 19 of the City Charter of the City of New York and section B19-14.0 et seq. of the Administrative Code of the City of New York.
On or about February 1,1960, the Fire Commissioner initiated an audit of petitioners’ returns for the calendar years beginning with 1953. The audit resulted in assessments by the Fire Commissioner in July, 1961 of taxes on premiums received on city fire risks that had not been included in the original returns for each of the years 1953 through 1960. Petitioners paid such additional taxes to the Fire Commissioner in August, 1961. On application to the respondent for refunds of overpayments by reason of the deductibility of such additional taxes paid to the Fire Commissioner, respondent granted refunds for the years 1958, 1959 and 1960, but disallowed petitioners’ claims for the years 1953 through 1957.
The authorization for refund of overpayments of the taxes in question is contained in section 559 of the Insurance Law which prior to January 1, 1960, had granted the respondent power to refund the amount of overpayment of such taxes “ during the six year period immediately preceding the discovery of such *1099 overpayment ”. (Italics supplied.) By chapter 236 of the Laws of 1959, approved April 8, 1959, and effective January 1, 1960, section 559 was amended to provide for refund of such excesses “ during the three year period immediately preceding the discovery of such overpayment ” (italics supplied).
Petitioners contend first that by their letter to the respondent dated December 28, 1959, they asserted a claim for the overpayment of the taxes in question, and hence that refunds are authorized for six years prior thereto. The court is satisfied, however, that the letter of December 28,1959, does not constitute any claim for refund of the taxes in question, since it did not and could not refer to any overpayment of fire insurance premiums, the deductible items not having been then determined, let alone paid; rather, it referred expressly to taxes on inland and ocean marine premiums, as to which there was a separate controversy, subsequently resolved. Moreover, the letter could not in any event be effective as a claim at that time, since the deduction allowed by paragraph (c) of subdivision 6 of section 552 is for premiums on which a city tax “ has been paid ”, not on which such tax is, or may become, payable. As of December 28, 1959, therefore, no deduction was allowable, no overpayment bad been made or even contemplated, and no claim was made for refund of the overpayments now in issne.
In the alternative, petitioners contend that on their claim for refund following the payments to the Fire Commissioner in 1961, they were entitled to refunds for overpayment during the preceding six-year period, rather than the three-year period allowed by respondent. That contention is founded on the well-recognized principle that absent an unequivocal expression by the Legislature of a contrary intent, statutes are construed as prospective only (see Shielcrawt v. Moffett, 294 N. Y. 180, 188-189). As applied to the facts at issue, however, this principle does not support petitioners’ position. On January 1, 1960, when the amendment to section 559 became effective, no tax had been assessed by or paid to the Fire Commissioner (he had not even commenced his audit), with the result that no deduction was then allowable and there was then no overpayment. Petitioners’ rights to the refunds in question did not accrue until the additional city taxes were assessed and paid in 1961. Section 559 authorizing refunds is essentially substantive, not procedural. It is not a Statute of Limitations as such, since it prescribes no time limits for the filing of a claim for refund after such claim arises. Even by analogy, however, to the operative effect of Statutes of Limitation, the amendment did not cut off or restrict the enforcement of any rights which *1100 the petitioners enjoyed at the time it became effective. Their rights to refunds did not come into being until some 20 months later. The decisions in Gilbert v. Ackerman (159 N. Y. 118) and People v. Cohen (245 N. Y. 419) relied on by petitioners, have no application here because they involved rights which accrued prior to the effective date of the legislative enactments. The refund claims in issue were governed by the statute as amended.
Respondent’s determination was therefore not arbitrary, nor unreasonable, nor contrary to law. That petitioners have been taxed by both the State and the city on the same premiums does not of itself require judicial relief. Such a result might have been avoided by filing proper returns in the first instance, or perhaps by protesting the Fire Commissioner’s assessments for the years as to which no refunds were available by reason of his delay in auditing.
The respondent’s determination is in all respects confirmed and the proceeding is dismissed on the merits.