OPINION OF THE COURT
Herman Cahn, J.
Petitioner Phoenix Home Life Mutual Insurance Company (Phoenix) seeks a judgment, pursuant to CPLR article 78, (1) annulling the determination of respondents Salvatore Curíale, Superintendent of Insurance of the State of New York (the Superintendent), and the Insurance Department of the State of New York (the Department), which disallowed petitioner’s claim that $157,064 of franchise tax recently paid by Phoenix for the year 1980 be applied as a credit against its 1990 retaliatory tax liability, (2) declaring that petitioner is entitled to the foregoing credit pursuant to Tax Law § 1511 (b), and (3) enjoining respondents from enforcing the claimed $157,064 liability or from penalizing petitioner for nonpayment of that amount.
The essential facts in this proceeding are not in dispute. At the times relevant herein, Phoenix was an insurance corpora *144 tian incorporated in Connecticut and authorized to conduct business in New York State. As such, Phoenix was subject to Insurance Law § 1112, which provides, inter alla, for the imposition of so-called "retaliatory taxes” on foreign and alien insurers doing business in New York. Section 1112 (a) (1) states that: "[i]f, by the laws * * * of any other state, any insurer organized or domiciled in this state * * * shall be, required to * * * pay taxes, fines, penalties, fees for licenses or certificates of authority or any other sum for the privilege of doing business in such other state * * * and such requirements are greater than those required of similar insurers organized or domiciled in such other state by the laws of this state for the privilege of doing business herein, then all similar insurers organized or domiciled in such other state * * * shall * * * pay [the Superintendent] for taxes, fines, penalties, fees for licenses or certificates of authority or for any other requirement for the privilege of doing business in this state, an amount determined in the manner prescribed by such other state, and shall be subjected to such greater requirements imposed by such other state upon similar insurers of this state.” Thus, a foreign insurer doing business in this State is required to pay a retaliatory tax, if that foreign insurer’s home State imposes taxes on similar New York insurers doing business in that State which exceed the taxes New York otherwise imposes on the foreign insurer.
The retaliatory tax has, as its name suggests, the effect of subjecting foreign insurers to the same tax and other burdens in New York to which a New York insurer would be subject in the foreign insurer’s home State.
In November 1990, Phoenix apparently paid the Department $569,272.30[1] representing initial payment towards its 1990 retaliatory tax liability, as required by section 1112 (a) (2).
In an unrelated matter, it appears that in November 1991, a Tax Court decision regarding Phoenix’ taxable income for the 1980 tax year was finalized, resulting in petitioner’s being required to pay additional Federal income taxes for the 1980 tax year. This recomputation of Federal taxes in turn caused Phoenix to become liable for additional State franchise taxes for the 1980 tax year under article 33 of the Tax Law, which *145 imposes a franchise tax on both foreign and domestic insurance companies. Consequently, in January 1992, Phoenix paid additional article 33 franchise taxes for the 1980 tax year in the amount of $157,064.[2]
In April 1992, the Department sent Phoenix a statement indicating a final amount of retaliatory tax due for the 1990 tax year of $1,347,784.82. This figure took into account Phoenix’ initial (November 1990) retaliatory tax payment, but did not credit Phoenix with the additional franchise tax which it had paid in January 1992.
Thereafter, in April 1992, Phoenix paid the balance of its 1990 retaliatory tax liability, less $157,064 — the amount of additional State franchise taxes which it had paid in January 1992. Phoenix claimed the additional franchise tax payment as a credit against its 1990 retaliatory tax liability. Petitioner maintains that it is entitled to this credit by virtue of Tax Law § 1511 (b), which provides that "[i]n assessing taxes under the reciprocal [retaliatory] provisions of section one thousand one hundred twelve of the insurance law, credit shall be allowed for any taxes paid” under article 33 (franchise taxes on insurance corporations).
Respondents argue that Phoenix can only be allowed a credit for the 1992 payment of 1980 franchise taxes against its 1980 retaliatory tax liability, and not its 1990 liability, in accordance with Insurance Law § 9109 (a) (1).
Section 9109 (a) (1) provides that: "[w]henever the superintendent is satisfied that because of cancellations, some mistake of fact, error in calculation, or erroneous interpretation of a statute * * * any authorized insurer * * * has paid * * * taxes, fees or other charges in excess of the amount legally chargeable against it during the three year period immediately preceding the cancellations or the discovery of such overpayment, [the Superintendent] shall refund to such insurer * * * the amount of such excess by applying the amount toward the payment of taxes, fees or other charges already due or which may become due” (emphasis added).
Respondents argue that the three-year limitation contained in section 9109 (a) (1) bars Phoenix’ claimed credit at this time. They also maintain that in seeking a credit for franchise tax payments against retaliatory taxes, there must be a *146 matching of taxable years, so that the additional franchise tax paid by Phoenix for the year 1980 could only be offset by a refund of the retaliatory tax for that year. Specifically, it is asserted that, when construed together, Insurance Law § 1112 and Tax Law § 1511 (b) "require a taxpayer to correlate its Article 33 franchise tax liability with its section 1112 retaliatory tax liability for a specific taxable period”, and that such matching is consistent with the purpose of both section 1112 and retaliatory taxation in general. Furthermore, respondents argue, without such matching it would be impossible to accurately compute the retaliatory tax. Respondents also maintain that, although section 1511 (b) specifically provides for a credit for article 33 taxes in assessing the retaliatory tax due under section 1112, "this credit language * * * only states explicitly what is implicit in Section 1112 of the Insurance Law.”
Petitioner, on the other hand, argues that the plain and unambiguous language in section 1511 (b) provides for a credit for any article 33 taxes, and does not include any implicit year-to-year matching requirement. Phoenix maintains that, when read together, section 1511 (b) of the Tax Law and section 9109 (a) (1) of the Insurance Law indicate that additional franchise taxes paid with respect to prior years may either be (1) credited against the next retaliatory tax payment due after the additional franchise tax was paid, or (2) credited against retaliatory taxes paid during the three-year period immediately preceding discovery of the overpayment of the franchise tax. Phoenix also argues that Tax Law § 1511 (b) is limited by Insurance Law § 9109 (a) (1) only insofar as refunds relating to prior years are concerned. Since Phoenix is seeking a credit as against taxes currently due, Phoenix claims that "neither Insurance Law § 9109 (a) (1) nor the case law construing it, precludes applying the Tax Law § 1511 (b) according to its plain language.”
Phoenix thus maintains that respondents’ disallowance of the claimed credit was arbitrary, capricious and contrary to law.
The United States Supreme Court has declared that the purpose of State retaliatory taxes "is not to generate revenue at the expense of out-of-state insurers, but to apply pressure on other States to maintain low taxes” on the enacting State. (Western & S. Life Ins. Co. v Board of Equalization, 451 US 648, 669-670 [1981].) Stated otherwise, the primary goal of retaliatory tax laws is "to promote the interstate business of *147 domestic insurers by deterring other States from enacting discriminatory or excessive taxes.” (Supra, at 668.) The Court of Appeals has observed that "[t]he purely retaliatory purpose of section 1112 (a) (1) is made clear by subdivision (d) which exempts foreign insurers from retaliatory taxes so long as there is no similar taxation of New York insurers in the other State.” (Matter of Industrial Indent. Co. v Cooper, 81 NY2d 50, 53 [1993].) Retaliatory taxes thus foster interstate insurance business by creating a level playing field as between foreign and domestic insurers. (Supra, at 54.)
As a threshold matter, the court rejects respondents’ argument that Insurance Law § 9109 bars Phoenix’ claimed credit. That section applies where excess taxes have been imposed by the State upon the taxpayer, and requires the taxpayer to claim a refund for that overpayment within a reasonable time, defined by the section as three years. Thus, if Phoenix were now attempting to claim a refund or credit for an overpayment of taxes for the tax year 1980, section 9109 (a) (1) of the Insurance Law would foreclose such a refund. However, there was, in fact, an underpayment of taxes for the year 1980. Section 9109 does not preclude Phoenix’ claimed franchise tax credit, which relates to its 1990 retaliatory tax liability, and which was not "discovered” until late 1991, nor paid until early 1992. All of the sections cited above require focusing on the tax liability which petitioner seeks to have reduced by using the credit for the January 1992 payment. This liability is that for the 1990 retaliatory tax, well within the three-year Statute of Limitations contained in Insurance Law § 9109 (a) (1). The date of payment is the crucial date— not the date when the tax liability actually accrued. Respondents’ reliance on Matter of Royal Ins. Co. v Thacher (38 Misc 2d 1097 [Sup Ct, NY County], affd without opn 19 AD2d 864 [1st Dept 1963], affd without opn 14 NY2d 745 [1964]) is unavailing. In Royal, a 1963 case, the Legislature had shortened the period for claiming a refund of tax overpayments from six to three years. The central issue, irrelevant to the present situation, was whether or not the taxpayers had made a timely request for a refund for the previous six years, prior to the three-year limit taking effect. Furthermore, Royal did not involve a retaliatory tax scheme and it is thus unclear as to whether or not the taxpayers in that case would have been entitled to a credit against such taxes, notwithstanding the three-year provision.
There is no requirement for a matching of taxable years *148 in order for an insurer to claim a credit against its retaliatory taxes pursuant to section 1511 (b).
"It is a fundamental principle of statutory interpretation that a court should attempt to effectuate the intent of the Legislature * * * and where the statutory language is clear and unambiguous, the court should construe the statute to give effect to the plain meaning of the words used.” (Eaton v New York City Conciliation & Appeals Bd., 56 NY2d 340, 345 [1982].) In interpreting particular provisions of a statute, courts should "give the statute a sensible and practical overall construction, which is consistent with and furthers its scheme and purpose * * * especially when an opposite interpretation would lead to an absurd result that would frustrate the statutory purpose.” (Matter of Long v Adirondack Park Agency, 76 NY2d 416, 420 [1990].) Furthermore, the intent of the Legislature should be determined "from the words and language used in the statute, and if the language thereof is unambiguous and the words plain and clear, there is no occasion to resort to other means of interpretation.” (Di Marco v Hudson Val. Blood Servs., 147 AD2d 156, 158 [1st Dept 1989].)
The language of section 1511 (b) clearly and unambiguously mandates that in assessing the retaliatory tax, "credit shall be allowed for any taxes paid” under article 33 (emphasis added). Respondents’ contention that section 1511 (b) contains an implicit year-to-year matching requirement is misplaced in view of this unequivocal language, and contradicts the Court of Appeals holding that "the word 'any’ means 'all’ or 'every’ and imports no limitation.” (Zion v Kurtz, 50 NY2d 92, 104, rearg denied 50 NY2d 1060 [1980]; Randall v Bailey, 288 NY 280, 285; Shilbury v Board of Supervisors, 54 Misc 2d 979, 982 [Sup Ct, Sullivan County 1967]; but see, Golden v Koch, 49 NY2d 690 [1980].) Had the Legislature intended a year-to-year matching requirement it could easily have included language to that effect, and, in any event, would not likely have chosen the unqualified language found in section 1511 (b).
John Hancock Mut. Life Ins. Co. v Pink (276 NY 421 [1938]), which respondents cite in support of their position that section 1511 (b) requires a matching of years, is unpersuasive. In that case, the central issue was whether or not certain New York City franchise taxes, enacted pursuant to State enabling legislation, were "laws of this State,” and thus eligible to be claimed as credits against the insurer’s retaliatory tax liability. Answering this question in the affirmative, the Court of *149 Appeals denied the insurer’s request that City franchise taxes paid in 1935 be applied as a credit against the insurer’s 1934 retaliatory tax. The Court did not explain the basis for its conclusion, however, nor did it reach the question posed by the instant case, namely, whether a credit could have been claimed as against current or future retaliatory tax liability and thus obtained at some point. As petitioner observes, "it is a leap in logic to infer * * * that John Hancock superimposes an unspoken year-to-year matching requirement on the plain wording of Tax Law §1511(b), which statute was not even at issue in that case.”
Respondents also argue that Tax Law § 1511 (b) merely states explicitly what is implicit in the calculation of the retaliatory tax as provided for in Insurance Law § 1112, and thus imports no special or additional instruction with regard to the allowance of credits for franchise taxes. This assertion, however, contravenes the common maxim of statutory construction which provides that "[i]t must be assumed that every provision of a statute was intended to serve some useful purpose.” (Grich v Wood & Hyde Leather Co., 74 AD2d 183, 184 [3d Dept 1980].) With this rule in mind, the only reasonable interpretation is that while Insurance Law § 1112 explains the method for comparing tax burdens and calculating the retaliatory tax, and thus takes the franchise tax into account, Tax Law § 1511 (b) dictates that, in making this calculation, credit be given for any franchise taxes paid.
Finally, respondents claim that, without year-to-year correspondence, it would be impossible to make an accurate comparison of tax burdens, and thus properly calculate the retaliatory tax. This argument can only be sustained if, and to the extent that, the relevant time period for comparison of tax burdens is limited to a single year. Such an interpretation, however, does not comport with the purpose of retaliatory taxation, which is, as previously noted, to equalize the over-all tax burdens of domestic and foreign insurers and thus create a level playing field. In addition, if the goal of the legislation is to achieve tax parity only in the year in which the tax is imposed, and if it would be impossible to accurately compute the retaliatory tax without year-to-year matching, then why permit any subsequent claim for a credit against a prior year’s tax, even those claims made within the period provided for in Insurance Law § 9109 (a) (1), which, according to respondents, governs the instant situation? On a practical level, respondents’ interpretation of the retaliatory tax scheme would place *150 Phoenix in the absurd situation wherein its claim for a credit for additional franchise taxes paid is foreclosed by a three-year bar before the claim itself has even accrued.
The court notes that Phoenix will not, as respondents suggest in correspondence annexed as petitioner’s exhibit, "benefit by its prior underpayment of taxes.” Had Phoenix paid the additional franchise tax in 1980, it could have claimed the same credit then against its retaliatory tax liability which it now seeks to apply.
"The test on judicial review of the decision of an administrative body is to determine whether its action was arbitrary or capricious * * * [or whether] its determination [had] a rational basis” (Matter of Phelps Mgt. Co. v Gliedman, 86 AD2d 540, 541 [1st Dept 1982], citing Matter of Colton v Berman, 21 NY2d 322).
Even according respondents’ decision the high degree of deference mandated, there is simply no rational basis in law or fact to support their position. The plain meaning of section 1511 (b) indicates that petitioner is entitled to the credit it seeks, unfettered by any implicit requirement of year-to-year matching. Under these circumstances the court finds that respondents’ determination was arbitrary and capricious and contrary to law. It should be set aside.

. Phoenix claims to have paid $506,272.30. However, respondents recite the larger figure, and correspondence submitted by Phoenix confirms that $569,272.30 was paid on November 30, 1990.

. Phoenix claimed a credit of $158,194, of which sum $157,064 represented the amount of the Federal changes, and $1,130 reflected New York State audit adjustments.