OPINION OF THE COURT
Peter H. Moulton, J.
Petitioner Prudential Insurance Company of America (Prudential) brings this proceeding to annul respondent’s determination, dated November 18, 2010, denying it a refund and credit for retaliatory taxes. Petitioner maintains that the determina *429 tion was affected by error of law, is arbitrary and capricious, and is an abuse of discretion. Respondent opposes the petition.[1]
The central issue in this proceeding is the interpretation of Tax Law § 1511 (b) and Insurance Law § 9109, as those statutes relate to retaliatory taxes. Retaliatory taxation is designed to keep other states from discriminating against companies domestic to the forum (see 19B Appleman, Insurance Law and Practice § 10929). Under a retaliatory tax scheme, if state A imposes a higher tax burden on companies doing business in state A, but based in other states, thereby favoring its own domestic companies, then state B may use a retaliatory tax to impose an equal tax burden on state A’s companies when they do business in state B.
It is undisputed that New York State’s retaliatory taxes (which are imposed pursuant to Insurance Law § 1112) may be offset by the amounts paid for franchise taxes, for the same tax year (see United Servs. Auto. Assn, v Curiale, 88 NY2d 306 [1996] [insurer was entitled to offset the amount it owed in retaliatory taxes for the tax year 1987, by the amount it paid in franchise taxes for the tax year 1987]). Here, petitioner seeks a credit of retaliatory taxes for the tax year 2003, an offset for the retaliatory taxes due and unpaid, for the tax year 2007, with a carryover for future years. However, petitioner seeks this relief as the result of a 2006 payment of additional franchise taxes for the tax year 1995, which does not correspond directly to the years for which the credit and offsets are sought.
Background
Petitioner is a New Jersey corporation doing business in New York (petition ¶ 2). All out-of-state insurers doing business in New York must pay a retaliatory tax, which is intended to pressure other states to maintain low taxes for New York based insurance companies that operate in foreign states (see Western & Southern Life Ins. Co. v State Bd. of Equalization of Cal., 451 US 648, 669-670 [1981]).
In 2006, Prudential recalculated the amount it owed to the Department of Taxation and Finance (DTF) for franchise taxes, for the tax year 1995, and paid DTF $8,351,720, plus $9,231,058 in interest, for a total of $17,582,778 (petition ¶ 11). The *430 recalculation was prompted by an Internal Revenue Service (IRS) audit of the insurer’s federal income tax liability, for the tax years 1997-2001 (id. ¶ 12). As a result of petitioner’s overstatement of its federal net operating loss (NOL) deductions for 1997-2001, a portion of petitioner’s NOL for those tax years was disallowed (id.).[2] This, in turn, affected the amount of franchise taxes Prudential owed to DTP for the tax year 1995, because the federal NOL is used in calculating state franchise tax liability, and because petitioner originally carried the NOL deductions, as permitted by law, back to the tax year 1995 (id.).
After Prudential’s 2006 payment of $17,582,778, it applied for a refund or credit of retaliatory taxes (id. ¶ 13). Specifically, petitioner sought a refund of retaliatory taxes for the tax year 2003, of $2,935,493, and cancellation of an assessment of retaliatory taxes for the tax year 2007, of $4,266,551 (id. ¶¶ 8, 10). Respondent’s counsel issued a legal opinion, dated November 2, 2010, concluding that Prudential was not entitled to a refund or credit, and respondent issued a denial by letter, dated November 18, 2010 (id. ¶¶ 14-15).
The Retaliatory Tax Scheme
The Superintendent of the New York State Insurance Department is responsible for assessing and collecting retaliatory taxes imposed on foreign insurers (see United Servs. Auto. Assn., 88 NY2d at 309). In assessing the amount of retaliatory taxes owed, the foreign insurer is generally entitled to a credit for the amount of Tax Law article 33 franchise taxes that it pays to New York (id.). This credit operates to “equalize the total taxes paid by the foreign insurer to New York — the article 33 franchise taxes plus the retaliatory tax — with the total amount of taxes that would be imposed on a comparable New York insurer doing business in the foreign State” (id.).
Two calculations are performed to determine whether a retaliatory tax is owed. As explained by the Court of Appeals, in United Servs. Auto. Assn.:
“The first calculation is the total amount of taxes, aside from any potential retaliatory tax, that New York imposes on the foreign insurer for the privilege of conducting an insurance business within its borders. The second calculation is the total amount of taxes that the foreign insurer’s State of domicile *431 would impose on a comparable New York insurer for the privilege of doing business in the foreign State. If the foreign State’s hypothetical tax bill is higher than New York’s actual tax bill, New York adopts the foreign State’s greater tax burden as its own and imposes it on the foreign insurer.” (United Servs. Auto. Assn., 88 NY2d at 309.)
The Relevant Statute
Prudential maintains that Tax Law § 1511 (b), which is part of article 33’s “Franchise Taxes on Insurance Corporations,” supports the verified petition. It provides in relevant part: “Credit against reciprocal taxes imposed by this state. In assessing taxes under the reciprocal provisions of section one thousand one hundred twelve of the insurance law, credit shall be allowed for any taxes paid under this article.”[3] (Tax Law § 1511 [b].)
Further, petitioner cites Insurance Law § 9109 (a) (1), which is part of a statute entitled “Refunds and penalties,” in support of the verified petition. The statute provides, in relevant part, that
“[wjhenever the superintendent is satisfied that because of cancellations, some mistake of fact, error in calculation, or erroneous interpretation of a statute of this or any other state, any authorized insurer . . . has paid to him pursuant to any provision of law, taxes, fees or other charges in excess of the amount legally chargeable against it during the three year period immediately preceding the cancellations or the discovery of such overpayment, he shall refund to such insurer . . . the amount of such excess by applying the amount toward the payment of taxes, fees or other charges already due or which may become due from such insurer until such excess has been fully refunded or at his discretion make a cash refund.” (Insurance Law § 9109 [a] [1] [emphasis added].)
Petitioner’s Arguments
Petitioner maintains that it is entitled to the relief sought because Tax Law § 1511 (b) grants a credit against retaliatory taxes for “any taxes paid under this article” and is without any qualifying language or condition (petitioner’s mem of law at 4).
*432 Prudential also maintains that, pursuant to Insurance Law § 9109, it is entitled to the relief sought “since the payment of additional corporation franchise tax was the result of an underpayment caused by an error in calculation or an erroneous interpretation of a statute of New York State — the Tax Law” (id. at 7). Petitioner notes that Tax Law § 1503 (a) defines “net income, beginning with taxable income under the Internal Revenue Code” (id. at 8). Accordingly, it argues that there was an erroneous interpretation of a New York statute, even though the additional payment was prompted by the recalculation of the federal NOL.
Additionally, petitioner maintains that there was a mistake of fact or an error in calculation, stemming from “several adjustments under the Internal Revenue Code relating to lease transactions and other matters” (id.). Petitioner asserts that the requirement that there be some mistake of fact, error in calculation, or erroneous interpretation of a statute should be read as “simply a generic and inclusive description of any and all circumstances that might give rise to an overpayment or retaliatory tax” (id. at 4-5).[4] As evidence that the statutory language was intended to include any and all circumstances giving rise to an overcharge, petitioner cites Matter of Mutual Benefit Health & Ace. Assn, v Holz (5 AD2d 388 [3d Dept 1958]) (id. at 6). In that case, the Insurance Department’s determination that no mistake of fact had occurred was reversed, because ignorance of a local law could be considered a mistake of fact, and because the Legislature did not draw fine distinctions between mistakes of law and fact (id.).
Petitioner also relies heavily on Matter of Phoenix Home Life Mut. Ins. Co. v Curiale (162 Misc 2d 142 [1994]), where an insurer sought a credit for retaliatory taxes for the tax year 1990, as a result of franchise tax payments made in 1992, for the tax year 1980. Justice Herman Cahn found that the Insurance Department’s denial of the credit lacked a rational basis (id. at 150). He rejected the Insurance Department’s argument that Insurance Law § 9109 (a) (1) did not apply because the *433 statute spoke to overpayment of taxes, not to underpayments (id. at 147). Petitioner also cites respondent’s counsel’s 2007 opinion, issued in connection with an unnamed insurer’s request for a retaliatory tax credit.[5]
[6] The opinion concluded that an offset of retaliatory taxes was permitted for the tax years 1998-2005, for franchise taxes paid in 2001, for the franchise tax years 1992-1994 (petitioner’s mem of law at 11; petitioner’s reply at 6). Prudential notes that respondent states that the Insurance Department is entitled to deference, yet ironically will not give deference to its own counsel’s legal opinion (petitioner’s reply at 6).
Respondent’s Arguments
Respondent maintains that the petition must be denied because Insurance Law § 9109, which governs credits and refunds of retaliatory taxes, does not authorize a refund or credit under these facts. Respondent also asserts that its interpretation should be given deference because the relevant statutes relate to the methodology for calculating and offsetting insurance taxes (respondent’s mem of law in opposition at 3-4, 11).
Respondent notes that Insurance Law § 9109 (a) (1), by its express terms, addresses overpayments, and petitioner’s claim involves an underpayment of franchise taxes in 1995 (id. at 1). Prudential has not alleged that it paid any retaliatory taxes, or had any such liability, in 1995-2001, when the purported error arguably occurred (id. at 12). Nor does petitioner point to an error, of any kind, made in the years that it seeks a retaliatory tax credit and refund (id.). Respondent also maintains that what occurred was an error of federal law, not state law (id. at 9, 12-13). Although the Tax Law incorporates the federal NOL in the calculation of state franchise taxes, the state law “does not provide for, or indeed allow, an examination by the Superintendent of the underlying validity of the federal income tax NOL” and “use of the NOL is simply part of the ministerial calculation process” (id. at 16). Therefore, respondent argues that there was no misinterpretation or misapplication of any state rule (id.). Further, the alleged mistake was clearly one of law, respondent argues, because petitioner does not claim it made any factual or calculation error with regard to its NOL deductions (id. at 15).
*434 Citing cases that discuss the well-known maxim of statutory construction, expressio unius est exclusio alterius, respondent disagrees with petitioner’s broad interpretation of the statute. Respondent argues that had the Legislature intended that the provision apply to any and all circumstances giving rise to an overcharge, the Legislature would have used different language (id. at 13-14). Moreover, respondent maintains that because the statute refers only to payments of retaliatory taxes made to “him,” the Superintendent cannot issue refunds or taxes based on excess amounts paid directly to DTF (id. at 9-10, 13).
Respondent further argues that Tax Law § 1511 (b) does not support petitioner’s requested relief. Although the statute provides for a credit, respondent maintains that it does not provide the manner in which franchise tax payments are to be credited (id. at 5, 19). Moreover, although the statute refers to “any taxes paid under this article” the legislative history indicates that this language was intended to ensure that new franchise taxes, along with older franchise taxes, would be credited in the same fashion as the previously existing franchise taxes, when calculating retaliatory taxes (id. at 6, 20; see also Bill Jacket, L 1974, ch 649 [attached as unnumbered exhibit to respondent’s mem of law]). The bill jacket includes a memorandum from the Insurance Department that states that “[s]ection 1511 provides for certain credits . . . Subdivision (b) continues the credit for privilege taxes paid to New York in assessing the taxes under the reciprocal provisions of [the former] Section 61 of the Insurance Law [now codified at Insurance Law § 1112 (a) (1)]).” (Ins Dept Mem, Bill Jacket, L 1974, ch 649, at 9.)
Respondent also maintains that nothing in the legislative history indicates that the statute was intended to alter respondent’s “long-standing method of calculating retaliatory tax liability under . . . the Insurance Law by comparing the New York Cost of Business with the Out of State Cost of Business for the same year” (respondent’s mem of law in opposition at 6-7).
Respondent further distinguishes Phoenix Home (162 Misc 2d 142 [1994], supra) on the basis that the arguments made here were not made in that case, and in any event, it was “obviously an outcome-driven determination” (id. at 18 n 8). Respondent maintains that the court was concerned that the three-year time limit under Insurance Law § 9109 would foreclose an insurer from receiving any credits for retaliatory taxes, relating to payments of franchise taxes, before the claim even accrued (id.). Respondent recognizes this inequity, and states that its *435 policy permits an insurer to take retaliatory tax credits for franchise tax payments made in the year of payment of that liability, or, alternatively, in the year for which the franchise liability accrued (id.; see also Logan aff 1Í 20). Neither situation is applicable here. Respondent also appears to distance itself from its counsel’s 2007 opinion, upon which petitioner relies, by indicating that “the Insurance Department has previously opined based on what it understood to be the holdings of Phoenix” (respondent’s mem of law in opposition at 17 n 7).
Respondent concludes that, to permit an insurer to apply franchise tax payments to any year that it chooses, other than a year with some nexus to the tax liability, defeats the statutory scheme (id. at 20-21). To do so encourages insurers to postpone payments or defer tax credits, to minimize the retaliatory tax burden, thereby defeating the equalization policy of retaliatory taxes (id.). In fact, nothing would prevent the insurer from aggregating franchise tax payments in order to avoid all retaliatory tax obligations in any given year where a retaliatory tax would be due, which is inconsistent with the purpose of such taxes (id. at 21).
Standard of Review
Generally, under CPLR 7803 “Q]udicial review of an administrative determination is limited to whether such determination was arbitrary or capricious or without a rational basis in the administrative record, and once it has been determined that an agency’s conclusion has a sound basis in reason the judicial function is at an end” (Matter of Mankarios v New York City Taxi & Limousine Commn., 49 AD3d 316, 317 [1st Dept 2008] [internal quotations marks and citations omitted]). Where the issue is one of pure statutory analysis, which is not dependant on an understanding of the agency’s underlying operational practices, or an evaluation of factual data and inferences to be drawn therefrom, no deference is due (see Kurcsics v Merchants Mut. Ins. Co., 49 NY2d 451 [1980]; Matter of Bikman v New York City Loft Bd., 14 NY3d 377 [2010]; Matter of Suffolk Regional Off-Track Betting Corp. v New York State Racing & Wagering Bd., 11 NY3d 559 [2008]). Legal interpretation is a court’s function, which cannot be delegated to the agency charged with the statute’s enforcement (see Roberts v Tishman Speyer Props., L.P., 62 AD3d 71, 80 [1st Dept 2009], affd 13 NY3d 270 [2009]).
Insurance Law § 9109 (a) (1), however, specifically requires that “the superintendent is satisfied” that a refund or *436 credit is due, indicating that the Legislature intended that the courts apply some level of deference. Further, in determining whether Insurance Law § 1112 (which imposes the retaliatory tax burden) allows for a credit for a commercial rent tax, the Court of Appeals has held that “it is proper to defer to the agency’s interpretative expertise unless that interpretation is unreasonable, irrational or contrary to the clear wording of the statute . . . We conclude that there is a rational basis for interpreting Insurance Law § 1112 to limit its application.” (Matter of Industrial Indem. Co. v Cooper, 81 NY2d 50, 54 [1993] [citations omitted].)
Accordingly, the court must determine if the Insurance Department’s determination is irrational or contrary to the clear language of the relevant statutes, and the court concludes that it is not.
Discussion
In ascertaining the intent of the Legislature, the court must first look to the language of the act itself (McKinney’s Cons Laws of NY, Book 1, Statutes § 92 [b]). Insurance Law § 9109, which is entitled “Refunds and penalties,” is the only provision in article 91 (which imposes taxes and fees on insurance companies) addressing the instances where respondent may refund or credit an insurer. Petitioner incorrectly maintains Insurance Law § 9109 permits credits for a mistake of fact, error in calculation, or erroneous interpretation of statute, in “any and all” circumstances giving rise to an overpayment. It is a rule of statutory construction that meaning and effect should be given to all language, and each word should be given distinct and separate meaning (Statutes § 231). Had the Legislature intended that the statute apply in “any and all” circumstances, it would have employed general, as opposed to limiting, language.
Respondent’s determination, that Prudential has not demonstrated an error in calculation, is not irrational or contrary to the clear wording of Insurance Law § 9109. No mathematical error has been described, and the sole basis for petitioner’s claim is the disallowance of the federal NOL deduction.[6] Such an interpretation gives the words error in calculation distinct *437 meaning from the words mistake of fact (discussed below). Nor is it irrational or contrary to the clear wording of Insurance Law § 9109 for respondent to find that petitioner has not demonstrated that there was an erroneous interpretation of state statute. Even though the Tax Law imports the federal NOL deductions in determining the amount of franchise tax due, and certain deductions were disallowed, petitioner has not alleged how the statute was misinterpreted as the result of the disallowance. Petitioner’s payments were made after DTF’s ministerial act of applying the revised federal NOL, in its recalculation of the franchise taxes due, and no issue of statutory construction or interpretation is implicated.
Whether an error of fact has occurred is a more difficult issue. Respondent attempts to distinguish errors of fact from errors of law, but provides no clear guidelines. However, even assuming that an error of fact occurred, respondent’s determination must be upheld, in light of the three-year time limit imposed by Insurance Law § 9109, and the requirement that the overcharge result “because of’ a mistake of fact, error in calculation, or erroneous interpretation of statute (Insurance Law § 9109 [a] [1]). Petitioner’s argument is that “because of’ a 1995 underpayment of franchise taxes, and petitioner’s 2006 recalculation of its franchise tax liability, an overpayment of retaliatory taxes occurred in 2003 (see petitioner’s mem of law at 7 [“the payment of additional corporation franchise tax was the result of an underpayment caused by an error in calculation or an erroneous interpretation of a statute”]). However, no error was made within three years of the purported 2006 discovery, resulting from the IRS audit. The alleged error was made in 1995 or, arguably, from 1997 through 2001, the years in which petitioner overstated its NOL deductions. It is not irrational or contrary to the clear wording of the statute for respondent to conclude that the refund and credit sought has insufficient nexus to (and, therefore, is not “because of”) the alleged mistake made in 1995 (or 1997-2001). Respondent’s position that Insurance Law § 9109 requires some form of year-to-year matching is also consistent with the statutory scheme. Without some form of year-to-year matching, an insurer could postpone or aggregate franchise tax payments to avoid retaliatory tax obligations in a particular year.[7]
*438 Petitioner’s reading of the Tax Law does not salvage this proceeding. As respondent notes, Tax Law § 1511 (b) does not set forth the manner in which franchise tax payments are to be credited. Nor does it specify any time period for the credit. It merely refers to a credit which “shall be allowed for any taxes paid under this article” (Tax Law § 1511 [b]). In Phoenix Home, Justice Cahn interpreted the word “any” as permitting a tax credit for any year, and rejected the Superintendent’s argument that the statute required some form of year-to-year matching (162 Misc 2d at 148). He reasoned that “[h]ad the Legislature intended a year-to-year matching requirement it could easily have included language to that effect, and, in any event, would not likely have chosen the unqualified language found in section 1511 (b).” (Id.)
However, as correctly argued by respondent, the word “any” refers to the type of taxes paid under the article, not the period of time for which a credit is permitted. The legislative history supports this conclusion, given the Legislature’s desire to ensure that old and new franchise taxes would be treated in the same fashion. It is also a rule of statutory construction that statutes of the same kind should be read in pari materia and should be construed together, in harmony, as though forming part of the same statute (McKinney’s Cons Laws of NY, Book 1, Statutes § 221). Courts have held that the Tax Law and the Insurance Law should be read in pari materia where they relate to the same subject matter (Matter of Guardian Life Ins. Co. of Am. v Chapman, 302 NY 226, 231 [1951] [to determine whether the Tax Law provided for a tax on a domestic life insurance company’s reinsurance premiums, it was necessary to “compare the language of the Tax Law provisions with the present Insurance Law provisions . . . Since the two laws are in pari materia, they must be read together and applied harmoniously and consistently”]).
Here, Tax Law § 1511 actually references Insurance Law §1112 (the statute imposing the retaliatory tax burden), and therefore, Tax Law § 1511 (b) and Insurance Law § 9109 should be read together. Accordingly, if the Superintendent does not have the authority under Insurance Law § 9109 to grant a refund or credit, this court cannot read Tax Law § 1511 as requiring that such a refund or credit be granted.
*439 It is hereby adjudged that the petition is denied and the proceeding is dismissed, without costs and disbursements.

. The court has considered the following submissions: (i) notice of petition, verified petition, Montellione affidavit and attached exhibits, (ii) petitioner’s memorandum of law, (iii) verified answer, Logan affidavit, and attached exhibits, (iv) respondent’s memorandum of law in opposition, and (v) petitioner’s reply memorandum of law.

. On January 27, 2006, petitioner agreed to the IRS audit adjustments (id.).

. Insurance Law § 1112 sets forth the obligation of foreign insurers to pay retaliatory taxes.

. Prior to a 1939 revision, petitioner notes that the statute previously referred to an “error, mistake or erroneous interpretation of statute” in lieu of the current language referencing “some mistake of fact, error in calculation, or erroneous interpretation of a statute of this or any other state” (Insurance Law § 9109 [a] [1]; petitioner’s mem of law at 5). Prudential maintains that although legislative history indicates that the amendment contained certain “clarifications” it was not intended to effect a substantive change in the application of the statute (id. at 5-6).

. Ops Gen Counsel NY Ins Dept No. 07-12-06 (Dec. 2007), available at http://www.dfs.ny.gov/insurance/ogco2007/rg071206.htm.

. Neither side has briefed the issue of whether the mistake of fact, error in calculation, or erroneous interpretation of statute may be made by the Superintendent, the insurer, the DTF, or any one of them. Presumably, Insurance Law § 9109 applies in all instances, but that issue need not be reached in light of the court’s denial of the petition.

. As previously noted, the Insurance Department states that, to avoid inequity, its policy (which is not applicable here) is to permit an insurer to take *438 retaliatory tax credits for franchise tax payments made in the year of payment of that liability, or, alternatively, in the year for which the franchise liability accrued (respondent’s mem of law in opposition at 18 n 8; see also Logan aff 120).